LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
 *elizabeth.deeley@lw.com*
Whitney B. Weber (CA Bar No. 281160)
 *whitney.weber@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Michele D. Johnson (CA Bar No. 198298)
 *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.755.8113

Susan E. Engel (*Pro Hac Vice*)
 *susan.engel@lw.com*
Margaret A. Upshaw (*Pro Hac Vice*)
 *maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN PRICE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 3:22-cv-03173-SK<br><br>**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: November 14, 2022<br>Time:  9:30 a.m.<br>Location: Courtroom C – 15th Floor<br>Judge:  Hon. Sallie Kim |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 14, 2022 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom C, 15th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102 Defendant Twitter, Inc. ("Twitter") through its undersigned counsel, will, and hereby does, move to dismiss Plaintiff Lauren Price's ("Plaintiff") Class Action Complaint ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6).

Twitter's Motion to Dismiss ("Motion") is based on this Notice, the supporting Memorandum of Points and Authorities ("Memorandum"), the Declaration of Susan E. Engel and the accompanying Request for Judicial Notice and Incorporation by Reference, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

**ISSUES TO BE DECIDED**

(1) Whether the Court should dismiss Plaintiff's Complaint because Plaintiff fails to allege a particularized, concrete injury sufficient to establish Article III standing to bring her claims.

(2) Whether the Court should dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), because Plaintiff also fails to state each of her claims.

Dated:  August 15, 2022

Respectfully submitted,

LATHAM & WATKINS LLP

By:  */s/ Elizabeth L. Deeley*

Elizabeth L. Deeley (CA Bar No. 230798)
 *elizabeth.deeley@lw.com*
Whitney B. Weber (CA Bar No. 281160)
 *whitney.weber@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Michele D. Johnson (CA Bar No. 198298)
 *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925

1        Telephone: +1.714.755.8113

2        Susan E. Engel (*Pro Hac Vice*)
          *susan.engel@lw.com*
3        Margaret A. Upshaw (*Pro Hac Vice*)
          *maggie.upshaw@lw.com*
4
         555 Eleventh Street, NW, Suite 1000
5        Washington, D.C. 20004-1304
         Telephone: +1.202.637.3309
6
         *Attorneys for Defendant Twitter, Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 2

     A.      Twitter Informs Account Holders That the Contact Information
            They Share With Twitter May Be Used for Advertising Purposes ...................... 2

     B.      FTC Complaint and Plaintiff's Complaint............................................................ 4

III.    LEGAL STANDARDS ............................................................................................... 6

IV.     ARGUMENT .............................................................................................................. 6

     A.      Plaintiff Lacks Article III Standing...................................................................... 6

     B.      Plaintiff's Contract, Implied Contract, and UCL Claims Fail
            Because She Does Not Allege Cognizable Injuries........................................... 10

     C.      Plaintiff's Requests for Equitable Relief Are Foreclosed by Sonner ................. 12

     D.      The Limitation of Liability Provision in Twitter's Terms of Service
            Bars Nearly All of Plaintiff's Claims................................................................. 13

     E.      Plaintiff Fails to State a Breach of Contract Claim............................................ 14

     F.      Plaintiff Fails to State a UCL Claim .................................................................. 16

     G.      Plaintiff's Breach of Implied Contract and Unjust Enrichment
            Claims Should Be Dismissed.............................................................................. 20

V.      CONCLUSION.......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abuelhawa v. Santa Clara Univ.*,
   529 F. Supp. 3d 1059 (N.D. Cal. 2021) ................................................................................20

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ............................................................................................11

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................6

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ..............................................................................................20

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..............................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................6

*Berkla v. Corel Corp.*,
   302 F.3d 909 (9th Cir. 2002) ..............................................................................................22

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ................................................................................................7

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014) ............................................................................................14

*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019) ..............................................................................19

*Chowning v. Kohl's Dep't Stores, Inc.*,
   733 F. App'x 404 (9th Cir. 2018) ......................................................................................20

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..............................................................................................................10

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................................11

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ................................................................................4, 18, 20

*DG3 Grp. (Holdings) Ltd. v. Lob.com, Inc.*,
No. 19-CV-05287-SK, 2019 WL 13081489 (N.D. Cal. Dec. 4, 2019) .................................23

*DiCarlo v. MoneyLion, Inc.*,
988 F.3d 1148 (9th Cir. 2021) ........................................................................................15

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ..........................................................................19

*Elizabeth M. Byrnes, Inc. v. Fountainhead Com. Cap., LLC*,
No. CV-20-04149-DDP, 2021 WL 5507225 (C.D. Cal. Nov. 24, 2021) ..........................12

*Flores v. United Parcel Serv., Inc.*,
768 F. App'x 677 (9th Cir. 2019) ..................................................................................14

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
209 Cal. App. 4th 1118 (2012) ......................................................................................14

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..........................................................................................6

*In re Google, Inc. Privacy Pol'y Litig.*,
No. 5:12-CV-001382-PSG, 2015 WL 4317479 (N.D. Cal. July 15, 2015)..........................8

*Greenstein v. Noblr Reciprocal Exch.*,
No. 21-CV-04537-JSW, 2022 WL 472183 (N.D. Cal. Feb. 15, 2022) ...............................8

*Hammerling v. Google LLC*,
No. 21-cv-090004-CRB, 2022 WL 2812188 (N.D. Cal. July 18, 2022) ..............18, 19, 22, 23

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ........................................................................................11

*Huynh v. Quora, Inc.*,
No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ........................9, 11

*I.C. v. Zynga, Inc.*,
No. 20-CV-01539-YGR, 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) .............................8

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*,
No. 3:18-MD-2828-SI, 2020 WL 1495304 (D. Or. Mar. 27, 2020).....................................9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................................2

*Klaehn v. Cali Bamboo, LLC*,
No. 19-CV-1498 TWR (KSC), 2021 WL 3044166 (S.D. Cal. June 14, 2021), *aff'd*, No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) ..........................................................19

*Klaehn v. Cali Bamboo LLC*,
  No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) .......................................12

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) .......................................................................................17

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .............................................................................6

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
  34 Cal. 4th 960 (2004) .......................................................................................14

*Lewis v. YouTube, LLC*
  244 Cal. App. 4th 118 (2015) .............................................................................14

*Lifeway Foods, Inc. v. Millenium Prods., Inc.*,
  No. CV 16-7099-R, 2016 WL 7336721 (C.D. Cal. Dec. 14, 2016) ........................21

*In re LinkedIn User Priv. Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013) ...............................................................9

*Morawski v. Lightstorm Ent., Inc.*,
  599 F. App'x 779 (9th Cir. 2015) .......................................................................22

*Morgan v. Harmonix Music Sys., Inc.*,
  No. C08-5211BZ, 2009 WL 2031765 (N.D. Cal. July 7, 2009) ............................20

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) .................................................................................14

*Nacarino v. Chobani, LLC*
  No. 20-cv-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ...................12

*Nationwide Agribusiness Ins. v. George Perry & Sons, Inc.*,
  338 F. Supp. 3d 1063 (E.D. Cal. 2018) ...............................................................15

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ...........................................................................................10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  971 F.3d 1042 (9th Cir. 2020) ............................................................................21

*Orkin v. Taylor*,
  487 F.3d 734 (9th Cir. 2007) ..............................................................................21

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ..............................................................................22

*Patterson v. Med. Rev. Inst. of Am., LLC*
  No. 22-cv-00413-MMC, 2022 WL 2267673 (N.D. Cal. June 23, 2022)................8

*Plumlee v. Pfizer, Inc.*,
  664 F. App'x 651 (9th Cir. 2016) .......................................................................21

*Price v. Apple, Inc.*,
  No. 21-cv-02846-HSG, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ...................20

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) ..................................................................10, 11

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) .............................................................................11

*Reilly v. Apple Inc.*,
  No. 21-cv-04601-EMC, 2022 WL 74162 (N.D. Cal. Jan. 7, 2022).........................12

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ................................................................23

*S.W. Engr., Inc. v. Yeomans Chi. Corp.*,
  No. 09-CV-110 JLS (RBB), 2009 WL 3720374 (S.D. Cal. Nov. 3, 2009) ...........15

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ................................................................19

*Schmitt v. SN Servicing Corp.*,
  No. 21-CV-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ...............19

*Sharma v. Volkswagen AG*,
  No. 20-cv-02394-JST, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021)........................12

*Shuman v. SquareTrade Inc.*,
  No. 20-cv-02725-JCS, 2021 WL 5113182 (N.D. Cal. Nov. 3, 2021) ...............19, 20

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .............................................................................12

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).........................................................................................6, 7

*Tabler v. Panera LLC*,
  No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019)...............10

*Taleshpour v. Apple Inc.*,
  549 F. Supp. 3d 1033 (N.D. Cal. 2021) ...............................................................20

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
  252 F. App'x 123 (9th Cir. 2007) .......................................................................22

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).........................................................................................6

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
  No. CV 18-2826 PSG, 2019 WL 6522843 (C.D. Cal. Aug. 19, 2019)....................................8

*United States v. Twitter*,
  No. 3:22-cv-3070, 2022 WL 1768852 (N.D. Cal. May 26, 2022)...........................................5

*Varga v. Wells Fargo Bank, N.A.*,
  796 F. App'x 430 (9th Cir. 2020) ........................................................................................11

*Vint v. Universal Studios Co. LLC*,
  No. CV 20-6787-GW-MRWX, 2021 WL 6618535 (C.D. Cal. Apr. 29, 2021) ....................21

*Warren v. Whole Foods Mkt. Cal., Inc.*,
  No. 21-CV-04577-EMC, 2022 WL 2644103 (N.D. Cal. July 8, 2022)................................18

*Wesch v. Yodlee, Inc.*,
  No. 20-CV-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021)..............................9, 11

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ..............................................................................................6

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020) .................................................................................18

*Williams v. Apple, Inc.*,
  No. 19-CV-4700-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020)................................13

*Wu v. Sunrider Corp.*,
  793 F. App'x 507 (9th Cir. 2019) ........................................................................................21

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
  No. LA ML19-02905 JAK (FFMx), 2022 WL 522484 (C.D. Cal. Feb. 9, 2022) .................12

## STATUTES

15 U.S.C.
  § 45(a)(1) .............................................................................................................................4
  § 45(n) ..................................................................................................................................4

Cal. Bus. Prof. Code § 22576 ..................................................................................17, 18, 19

Cal. Civ. Code
  § 1641...................................................................................................................................15
  § 1668...................................................................................................................................13

Cal. Civ. Proc. Code § 339(1)...................................................................................................21

1

**RULES**

2

Fed. R. Civ. Proc.

    12(b)(1) ........................................................................................................................6

    12(b)(6) ........................................................................................................................6

Fed. R. Evid. 201(b) ...........................................................................................................4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Lauren Price ("Plaintiff") does not allege that Defendant Twitter, Inc. ("Twitter") obtained her contact information without consent or that Twitter shared her information with anyone.  Her only allegation is that Twitter provided ads by matching contact information that she voluntarily provided to Twitter with the same contact information that third-party advertisers were already using for marketing purposes.  According to Plaintiff, the problem with that conduct is that she allegedly provided her contact information to Twitter for security purposes alone, not for advertising purposes.  But Twitter *expressly disclosed* in its Privacy Policy that contact information would be used for both security *and* for advertising.  *See* Ex. B at 3 (2020 Privacy Policy) ("We use [contact information] for things like keeping your account secure *and* showing you . . . ads." (emphasis added)).[1]  And Twitter also expressly informed account holders that they could "opt out of interest-based advertising" if they preferred.  *Id.* at 10.

Plaintiff's claims in this case fail for several reasons that apply to all or many of her claims. *First*, Plaintiff lacks Article III standing because she has not (and cannot) allege a particularized, concrete injury from Twitter's use of voluntarily provided contact information to display more relevant ads, much less any threat of future harm that could support standing for injunctive relief. *Second*, that failure to allege any actual injury is also fatal to Plaintiff's contract, implied contract, and California Unfair Competition Law ("UCL") claims, each of which requires actual injury— and for UCL, economic injury—to state a claim.  *Third*, Plaintiff's requests for equitable relief (including the entirety of her UCL and unjust enrichment claims) fail because Plaintiff does not sufficiently allege that she lacks adequate remedies at law, as she must.  *Fourth*, the limitation of liability provision in Twitter's Terms of Service independently bars Plaintiff's contract, implied contract, and unjust enrichment claims because Plaintiff alleges no direct damages.

Even aside from those overarching bases for dismissal, each of Plaintiff's claims fails for claim-specific reasons:

---

[1]  All Exhibit ("Ex.") references herein are to the exhibits attached to the concurrently filed Declaration of Susan E. Engel in Support of Twitter's Motion to Dismiss Class Action Complaint.

- **Contract.**  Plaintiff's contract claim fails because she does not allege any actual breach of the promises she identifies.

- **UCL.**  Plaintiff's UCL claim fails because Plaintiff does not plead actual reliance, or adequately allege any misrepresentation or any other underlying misconduct that could support a claim.

- **Implied contract and unjust enrichment.**  Plaintiff's implied contract and unjust enrichment claims fail because they are barred by the statute of limitations and the parties' express contract, and Plaintiff cannot identify any breach or misconduct to support either claim in any event.

For all of these reasons, the Complaint should be dismissed.

## II.     BACKGROUND

### A.     Twitter Informs Account Holders That the Contact Information They Share With Twitter May Be Used for Advertising Purposes

Twitter "operates an online communication service" that allows "users to communicate with one another by posting 'tweets,' or short messages."  Compl. ¶ 1.  When an account holder creates a Twitter account, she "agree[s] to be bound by" Twitter's User Agreement, which incorporates the Twitter Terms of Service, Twitter Privacy Policy, and the Twitter Rules and associated policies, and she must provide certain basic information to Twitter including either "an email address or phone number."  *See* Ex. A at 1 (2018 Terms); Ex. B at 4 (2020 Privacy Policy).[2] Twitter account holders may also choose to share their contact information with Twitter at other points during their use of the service, including if they choose to enable one of Twitter's security features, such as two-factor authentication, account recovery, or account re-authentication.  *See* Compl. ¶¶ 33, 37, 42, 48.  The phone number or email address provided for security purposes can be the same or different from the one provided during the account creation process.

Like many free online services and social-media websites, Twitter's "core business model" involves advertising to its account holders.  *See id.* ¶ 24.  Twitter's Terms of Service provide that

---

[2] As explained in Twitter's concurrently filed Request for Judicial Notice and Incorporation by Reference ("RJN"), the Court may properly consider Twitter's Terms of Service and Privacy Policy as they are integral to Plaintiff's claims, are referred to repeatedly in the Complaint, and are publicly available documents that are capable of ready and accurate determination.  RJN at 2-4; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  This Motion looks to the 2018 Terms of Service and the 2020 Privacy Policy because those are the versions Plaintiff appears to invoke in her Complaint.  *See* Compl. ¶¶ 64-67, 83, 88-89.

"through . . . use of [Twitter's] Services," account holders "consent to the collection and use" of their information "as set forth in the Privacy Policy."  Ex. A at 2.  The Privacy Policy, in turn, informs account holders that Twitter "uses [their] contact information . . . to personalize [its] services, including ads" and "to market to [them]."  Ex. B at 6.[3]  In fact, the Privacy Policy refers several times to Twitter's use of contact information for advertising purposes, and it specifically addresses the use of contact information for both security and advertising in the same sentence.  *See id.* at 3 ("You can choose to share additional information with us like your email address, [and] phone number. . . .  We use this information for things like keeping your account secure and showing you . . . ads."); *id.* at 10 ("We use the information described in this Privacy Policy to help make our advertising more relevant to you, to measure its effectiveness, and to help recognize your devices to serve you ads on and off of Twitter.").  Twitter also discloses that account holders may use a "consumer choice tool" to "opt out of interest-based advertising," and Twitter includes the relevant hyperlink directly in its Privacy Policy.  *Id.*

Twitter "offers various services that advertisers can use to reach their existing marketing lists on Twitter."  Compl. ¶ 26.  In particular, "Tailored Audiences" "allows advertisers to target specific groups of Twitter account holders by matching the telephone numbers and email addresses that Twitter collects to the advertisers' existing lists of telephone numbers and email addresses." *Id.*  "Partner Audiences" "allows advertisers to import marketing lists from data brokers . . . to match against the telephone numbers and email addresses collected by Twitter."  *Id.*  In both circumstances, *advertisers* share with Twitter contact information that people have already provided to advertisers.  And unless account holders have opted out of interest-based ads, Twitter matches advertisers' contact information to emails or phone numbers that account holders have associated with their Twitter accounts, and sends those account holders ads.

---

[3] Prior versions of Twitter's Privacy Policy throughout the Class Period similarly disclosed that Twitter uses contact information provided by account holders for advertising and marketing purposes.  *See, e.g.*, Ex. C at 1 (2018 Privacy Policy) (stating that Twitter uses "email address [and] phone number" to show account holders "more relevant . . . ads"); *id.* at 4 ("Twitter also uses your contact information to market to you."); Ex. D at 2 (2012 Privacy Policy) ("We may use your contact information to send you information about our Services or to market to you.").

**B.      FTC Complaint and Plaintiff's Complaint**

While Twitter's Privacy Policy clearly discloses that it may use information provided by account holders for interest-based advertising, Twitter did not specifically repeat that disclosure or provide a hyperlink to the Privacy Policy when it asked account holders to provide contact information for security purposes, in contrast to the account creation process.  *See* Compl. ¶¶ 39, 45, 52; Ex. B at 4, 10.  Accordingly, in October 2019, when Twitter discovered that it had been using such information inadvertently in its Tailored Audiences and Partner Audiences services, it notified account holders of the issue, in line with its commitment to transparency and its view of best practices.  Twitter explained to account holders that it had "recently discovered" the issue, that "[n]o personal data was ever shared externally with [] partners or any other third parties," and that Twitter was taking action to remedy the issue.  *See* Ex. E at 1-2 (Oct. 8, 2019 Twitter Announcement); *see also* Ex. G ¶ 38 (FTC Complaint) (referencing Twitter's disclosure of issue in 2019).[4]  Twitter has since updated its security-flow disclosures to allow account holders to opt out of use of their contact information for interest-based advertising directly within the security flow itself.  *See* Ex. F.

Over two and a half years after Twitter made its 2019 announcement, on May 25, 2022, the Federal Trade Commission ("FTC") filed a complaint against Twitter ("FTC Complaint"), generally alleging that "while Twitter represented to users that it collected their telephone numbers and email addresses to secure their accounts, Twitter failed to disclose that it also used user contact information to aid advertisers in reaching their preferred audiences."  Ex. G ¶ 2; *see also* Compl. ¶¶ 6, 29.[5]  That same day, Twitter reached a settlement with the FTC, which was not conditioned

---

[4] The documents cited in this Section, including Twitter's public announcement, Twitter's current security-flow disclosures, the FTC Complaint, and the statement by FTC Chair Lina M. Khan, are subject to judicial notice and properly considered by the Court, because they are publicly available documents that are "not subject to reasonable dispute" and "can be readily determined from sources whose accuracy cannot reasonably be questioned."  RJN at 4-6 (quoting Fed. R. Evid. 201(b)).  The FTC Complaint is also properly considered by the Court for the separate reason that it is extensively cited and discussed in the Complaint.  *Id.* at 4.

[5] The FTC brought only deception, rather than unfairness, claims against Twitter under the FTC Act.  *See* Ex. G ¶¶ 60-75.  Unlike unfair claims, deception-based claims do not require any showing of injury.  *See* 15 U.S.C. § 45(a)(1) (establishing that both "unfair" and "deceptive" acts or practices are unlawful); *id.* § 45(n) (providing that the FTC may not declare an act or practice unlawful as "unfair" "unless the act or practice causes or is likely to cause substantial injury to consumers"); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012)

on any finding of injury, liability, or wrongdoing.  *See United States v. Twitter*, No. 3:22-cv-3070, 2022 WL 1768852, at *1 (N.D. Cal. May 26, 2022).  In a statement issued by FTC Chair Lina M. Khan, the FTC acknowledged that Twitter's Privacy Policy did disclose "that contact information would be used for advertising purposes," but noted that according to the FTC Complaint, that disclosure was not repeated at the time account holders provided contact information to enable security features.  *See* Ex. H at 2 (Statement by FTC Chair Lina M. Khan).

Shortly after the FTC Complaint and settlement were announced, Plaintiff filed this Complaint, which largely copies the FTC Complaint.  *See, e.g.*, Compl. ¶¶ 39, 40 (relying on the "2022 FTC Complaint" for allegations regarding Twitter's conduct).  Just like the FTC Complaint, Plaintiff's Complaint does not contain any factual allegations suggesting that Twitter impermissibly *disclosed* account holder contact information to advertisers.  *See id.* ¶ 5 (alleging that advertisers were able "to target specific groups of Twitter users by matching the telephone numbers and email addresses that Twitter collected to the advertisers' existing (or purchased) lists of telephone numbers and email addresses"); Ex. G ¶ 26 (FTC Complaint).  Nor does the Complaint challenge Twitter's use of contact information that account holders provided during the account creation process.  Rather, the core allegation is that when account holders voluntarily provided that same type of basic contact information in connection with security features, Twitter was allegedly authorized to use it only for security purposes, but instead used it for advertising purposes as well.  *See, e.g.*, Compl. ¶¶ 23-54.

Plaintiff alleges that she was affected by the alleged conduct because, "between May 2013 and September 2019," she "provided her telephone numbers and/or email addresses . . . to Twitter regarding two-factor authentication, account recovery, and/or account re-authentication."  *Id.* ¶ 9. Plaintiff does not allege which of those pieces of information she provided, which security feature she enabled, or whether she had previously provided the exact same phone number or email address to Twitter to create or update her account.  *See* Ex. B at 4 (2020 Privacy Policy) (noting that either a phone number or email address is required to create an account).  Nor does she allege

---

(articulating relevant test for each prong and indicating that injury inquiry applies only to "unfair" practices).

that she received any interest-based ads or, to the contrary, that she opted out of interest-based advertising.

Based solely on those allegations, Plaintiff seeks legal and equitable relief and asserts claims for breach of contract, breach of implied contract, violation of the UCL, and unjust enrichment.  Compl. ¶¶ 9, 85-117.

## III.   LEGAL STANDARDS

**Rule 12(b)(1).**  A court must dismiss claims where a plaintiff fails to establish Article III standing.  *White v. Lee*, 227 F.3d 1214, 1242, 1244 (9th Cir. 2000).  When a defendant challenges Article III standing based on the face of the complaint, the Court accepts the plaintiff's allegations as true and "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**Rule 12(b)(6).**  A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  Taking only "well-pleaded factual allegations" as true, a court "determine[s] whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

## IV.   ARGUMENT

### A.   Plaintiff Lacks Article III Standing

To establish Article III standing, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  An injury in fact must be both "concrete and particularized."  *Id.* at 339.  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.* (citation omitted).  To be "concrete," the injury "must actually exist" and be "'real,' and not 'abstract.'"  *Id.* at 340 (citation omitted); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("No concrete harm, no standing.").

1    Plaintiff fails to meet these standards.  Plaintiff alleges that she voluntarily provided basic

2    contact information to maintain the security of her account, and Twitter allegedly implied that her

3    information would be used only for security purposes, but in fact used it to display interest-based

4    advertisements as well.  The only concrete result of that alleged conduct is that Plaintiff may have

5    viewed more relevant advertisements (if she did not opt out of interest-based advertising), because

6    she had also provided her contact information to a third-party advertiser for advertising purposes.

7    Plaintiff does not even try to suggest that receiving an interest-based ad from Twitter is itself an

8    injury.[6]  Indeed, Plaintiff fails to allege that any interest-based ad she received is traceable to

9    information she provided Twitter only through a security feature, rather than through the account

10   creation process or at another time.  *See* Compl. ¶¶ 8-9 (alleging only that Plaintiff provided "her

11   telephone numbers and/or email addresses" to Twitter regarding "two-factor authentication,

12   account recovery, and/or account re-authentication").  Plaintiff thus cannot allege any injury that

13   affected her "in a personal and individual way" as a result of Twitter's purported misuse of contact

14   information for interest-based advertising.  *Spokeo*, 578 U.S. at 339; *Birdsong v. Apple, Inc.*, 590

15   F.3d 955, 960-961 (9th Cir. 2009) (no standing where plaintiffs' injury was not "particularized *as*

16   *to themselves*").

17          Rather than rely on any purported harm from receiving an interest-based advertisement,

18   Plaintiff instead attempts to shoehorn commonly alleged harms from other contexts (most notably,

19   the data-breach context) into this case.  Specifically, Plaintiff claims that she and the class (1)

20   "suffered harm in the form of diminution of value" of their telephone number or email address and

21   damage to their "property right" over that information, Compl. ¶¶ 108, 109; and (2) "did not

22   receive the benefit of the bargain . . . for which they paid valuable consideration in the form of the

23   personal information they agreed to share," *id.* ¶ 94.  Courts have repeatedly rejected both theories

24   of standing on far more compelling allegations.

---

[6] As noted above, the FTC brought only deception-based claims that do not require any showing of injury.  *See supra* Section II.B.  Because the FTC has authority to act even in the absence of any particularized injury to a consumer, the FTC settlement with Twitter casts no light on the viability of this lawsuit.  Plaintiff is subject to Article III, as well as the traditional elements of her causes of action, which require a showing of concrete and particularized injury.

*First*, courts regularly reject diminution-in-value theories where, as here, the plaintiff fails to allege "both the existence of a market for her personal information and an impairment of her ability to participate in that market." *Greenstein v. Noblr Reciprocal Exch.*, No. 21-CV-04537-JSW, 2022 WL 472183, at *5 (N.D. Cal. Feb. 15, 2022) (citation omitted).  In fact, at least three courts in this district have rejected similar diminution-in-value theories *this year alone*.  *See id.* (finding no standing based on diminution-in-value theory where plaintiffs did not show how data released in a data breach became "less valuable"); *I.C. v. Zynga, Inc.*, No. 20-CV-01539-YGR, 2022 WL 2252636, at *12 (N.D. Cal. Apr. 29, 2022) (same); *Patterson v. Med. Rev. Inst. of Am.*, LLC, No. 22-cv-00413-MMC, 2022 WL 2267673, at *3 (N.D. Cal. June 23, 2022) (similar).[7]

Here, Plaintiff does not allege the existence of a market for her basic contact information; nor does she allege that she wanted to sell and could not sell her information, or otherwise explain how her information *lost* value.  Indeed, such allegations would make little sense in the context of this case, which not only involves *individual* pieces of contact information, *see Greenstein*, 2022 WL 472183, at *6 (noting that "markets for individual data generally value more sensitive and important data" than names and driver's license numbers), but also types of information that are *designed* to be shared with others for free, through the act of dialing or clicking send, *see Zynga,* 2022 WL 2252636, at *8 (explaining that "basic contact information" "is designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation").

And while data-breach cases like *Greenstein* and *Zynga* reject standing arguments even where the information was allegedly publicly disclosed, Plaintiff's allegation of diminished value in this case is especially weak because there is no alleged disclosure.  To the contrary, Plaintiff is alleging that Twitter used information for a purpose (*i.e.*, advertising) that was not disclosed at the time Plaintiff allegedly enabled a security feature.  But to the extent Twitter used Plaintiff's information at all in its Partner Audiences and Tailored Audiences products, third-party advertisres were already using the *same* information for *advertising* purposes.  *See* Compl. ¶¶ 5, 26 (alleging

---

[7] These recent decisions are in line with many prior decisions similarly finding diminution-in-value theories insufficient for Article III standing.  *See, e.g.*, *In re Uber Techs., Inc., Data Sec. Breach Litig.*, No. CV 18-2826 PSG (GJSx), 2019 WL 6522843, at *5 (C.D. Cal. Aug. 19, 2019); *In re Google, Inc. Privacy Pol'y Litig.*, No. 5:12-CV-001382-PSG, 2015 WL 4317479, at *4-5 (N.D. Cal. July 15, 2015).

that Twitter matched information with "advertisers' *existing*" lists of contact information (emphasis added)).  Twitter itself likewise already was using any contact information that Plaintiff provided during the account creation process.  There is no basis to conclude that Plaintiff's contact information somehow lost value if Twitter used it internally for advertising purposes after she provided it through a security feature.

*Second*, courts reject benefit-of-the-bargain theories of injury where, as here, the plaintiff has not paid anything for the service.  *See In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (rejecting Article III standing based on "benefit of the bargain" theory where "the FAC fail[ed] to sufficiently allege that Plaintiffs actually provided consideration for the security services" at issue); *cf. Wesch v. Yodlee, Inc.*, No. 20-CV-05991-SK, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (rejecting benefit-of-the-bargain theory for purposes of UCL claim where plaintiffs did not allege they "paid" defendant "any money for use of its service"); *Huynh v. Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (same, for contract damages).

Even if the benefit-of-the-bargain theory could apply in the context of free services, it still has no place in this case.  Plaintiff does not allege what it is she purportedly "bargained" for and did not receive.  *See* Compl. ¶ 94 (alleging only that Plaintiff "did not receive the benefit of the bargain for which [she] contracted and for which [she] paid valuable consideration"); *see In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:18-MD-2828-SI, 2020 WL 1495304, at *8, *32 (D. Or. Mar. 27, 2020) (dismissing for lack of standing where plaintiffs did not adequately allege what "they reasonably expected" from the bargain or that their expectations were in fact "the parties' bargain that [defendant] did not meet").  Nor could she make such allegations.  Plaintiff (1) obtained Twitter's free services by agreeing to its Terms of Service and Privacy Policy, which clearly disclosed that the information she provided (including phone number and email address) would be used to provide interest-based ads, *see* Ex. A at 1; Ex. B at 3, 6; and (2) obtained Twitter's free security features by providing either her phone number or email address.  She thus obtained the full benefit of any bargain she purportedly struck.

1      Plaintiff thus lacks any concrete injury sufficient to recover damages.  And, to the extent
2  Plaintiff seeks injunctive relief, she fails to allege the "real and immediate threat of repeated injury"
3  required to establish standing for such relief.  *See O'Shea v. Littleton,* 414 U.S. 488, 496 (1974);
4  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (injunctive relief requires showing plaintiff
5  "will again be wronged in a similar way").  In fact, Plaintiff does not include even a conclusory
6  allegation of future harm, and she alleges no ongoing conduct, as she must in order to have standing
7  to seek injunctive relief.  *See, e.g.*, Compl. ¶¶ 27, 29, 39, 45, 52 (alleging conduct from May 2013
8  to September 2019 throughout Complaint); *see also id.* ¶ 73 (defining Class Period as May 2013
9  to September 2019); *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *8
10  (N.D. Cal. Oct. 29, 2019) (dismissing request for injunctive relief where plaintiff made "no
11  allegation of future injury in the complaint whatsoever").  Nor could she include any such
12  allegations, because there is no risk of future injury.  To the extent she is concerned that her contact
13  information may be used for interest-based advertising in the future, she may opt out of such
14  advertising. *See* Ex. B at 10.  And Twitter has since updated its security-flow disclosures to remind
15  account holders that their information will be used for advertising purposes and to provide an opt-
16  out option directly within the flow. *See* Ex. F.  Plaintiff thus could not establish any possible threat
17  of repeated injury, even if she were to provide a different email address or telephone number to
18  enable a security feature.

19      Plaintiff's alleged injuries do not suffice to establish any particularized, concrete, or future
20  injury from Twitter's alleged use of basic contact information to display more relevant advertising.
21  The Complaint should be dismissed for lack of Article III standing.

### B.    Plaintiff's Contract, Implied Contract, and UCL Claims Fail Because She Does Not Allege Cognizable Injuries

24      Even if Plaintiff can establish injury for purposes of Article III standing, Plaintiff's
25  contract, implied contract, and UCL claims still fail because Plaintiff has not alleged a
26  compensable injury for purposes of those claims.  *See Pruchnicki v. Envision Healthcare Corp.*,
27  845 F. App'x 613, 614 (9th Cir. 2021) (explaining that even where a plaintiff alleges "sufficient
28  injury-in-fact to support standing, whether the allegations adequately allege[] compensable

1  damages is a different question" (citation omitted)).  The contract and implied contract claims

2  require as an element "appreciable and actual damage" as a result of Twitter's conduct.  *Aguilera*

3  *v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *see also Varga v. Wells*

4  *Fargo Bank, N.A.*, 796 F. App'x 430, 431 (9th Cir. 2020) (affirming dismissal of contract and

5  implied contract claims under California law where plaintiff "did not plausibly allege that she had

6  suffered damages or other injury" from the alleged breach).  Similarly, in order to state a UCL

7  claim, Plaintiff must plead "lost money or property"—*i.e.*, economic injury.  *Hinojos v. Kohl's*

8  *Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th

9  Cir. 2015).

10  As discussed above, Plaintiff does not allege any actual injury.  To begin with, Plaintiff

11  does not actually allege that she received interest-based ads at all, let alone as a result of contact

12  information she provided to enable a security feature (as opposed to through the account creation

13  process, where account holders are required to provide such information).  *See supra* Section IV.A.

14  But even if she had, courts routinely find that Plaintiff's benefit-of-the-bargain and diminution-in-

15  value theories are insufficient to state an injury for a contract or UCL claim.  *See* Compl.

16  ¶¶ 94, 108.  As the Ninth Circuit explained in *Pruchnicki*, "mere misappropriation of personal

17  information does not establish compensable damages."  845 F. App'x at 614-15 (citation omitted)

18  (rejecting diminution-in-value theory for contract-based claims).  And where a plaintiff has not

19  *paid for* defendant's services, a benefit-of-the-bargain theory fails to state an injury because the

20  plaintiff has not "surrender[ed] more or acquir[ed] less in a transaction than they otherwise would

21  have."  *E.g.*, *Wesch*, 2021 WL 1399291, at *6 (rejecting benefit-of-the-bargain theory for UCL

22  claim where plaintiffs did not allege they paid defendant money for its services); *Cottle v. Plaid*

23  *Inc.*, 536 F. Supp. 3d 461, 484 (N.D. Cal. 2021) (same, collecting cases); *Huynh*, 2019 WL

24  11502875, at *7, *10 (dismissing contract and UCL claims).

25  Because Plaintiff has not alleged any appreciable and actual damage or economic injury,

26  her contract, implied contract, and UCL claims should be dismissed.

27

28

1    **C.      Plaintiff's Requests for Equitable Relief Are Foreclosed by *Sonner***

2         Plaintiff seeks equitable remedies (restitution, disgorgement, and injunctive relief) in

3    connection with her UCL, unjust enrichment, and breach of contract claims, Compl. ¶¶ 95, 110,

4    117, all of which must be dismissed under the Ninth Circuit's decision in *Sonner v. Premier*

5    *Nutrition Corp.*, 971 F.3d 834, 842-43 (9th Cir. 2020).  *Sonner* holds that a plaintiff cannot seek

6    equitable relief in federal court unless she demonstrates that she lacks "an adequate remedy at

7    law," yet Plaintiff includes just a single, conclusory allegation that she "and Class members have

8    no adequate remedy at law."  Compl. ¶ 115.  Such bare allegations are insufficient to establish the

9    propriety of seeking equitable relief in federal court.  *See Sonner*, 971 F.3d at 844; *Klaehn v. Cali*

10   *Bamboo LLC,* No. 21-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (affirming dismissal

11   of UCL claim where "Plaintiffs failed to make any plausible allegation that they lacked an adequate

12   remedy at law"); *Reilly v. Apple Inc.*, No. 21-cv-04601-EMC, 2022 WL 74162, at *10 (N.D. Cal.

13   Jan. 7, 2022) (dismissing claims for equitable relief under *Sonner* where plaintiff "merely

14   assert[ed] that he lack[ed] adequate remedies at law, but fail[ed] to allege facts or reasons why that

15   is the case").[8]

16        And Plaintiff's threadbare allegation of inadequate legal remedies is belied by the fact that

17   she seeks legal remedies in connection with her contract claims, which are based on the same

18   conduct as her UCL and unjust enrichment claims.  *See* Compl. ¶¶ 85, 93-94, 107, 113.  In doing

19   so, Plaintiff effectively concedes that adequate legal remedies exist for her purported harm.  Courts

20   routinely dismiss claims for equitable relief in similar circumstances.  *See, e.g., Sharma v.*

21   *Volkswagen AG*, No. 20-cv-02394-JST, 2021 WL 912271, at *908 (N.D. Cal. Mar. 9, 2021)

22   (dismissing UCL and unjust enrichment claims under *Sonner* where plaintiffs alleged they

23   "suffered a loss of money and/or loss in value" and noting that "[p]ost-*Sonner* courts have

24   indicated that this is exactly the type of injury for which legal remedies are appropriate"); *Nacarino*

25   *v. Chobani*, LLC, No. 20-cv-07437-EMC, 2021 WL 3487117, at *12-13 (N.D. Cal. Aug. 9, 2021)

---

26   [8] *See also In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. LA ML19-02905 JAK
27   (FFMx), 2022 WL 522484, at *72 (C.D. Cal. Feb. 9, 2022) (dismissing claims for equitable relief
     where plaintiff relied on "one conclusory allegation in the [complaint]"); *Elizabeth M. Byrnes, Inc.*
28   *v. Fountainhead Com. Cap., LLC*, No. CV-20-04149-DDP (RAOx), 2021 WL 5507225, at *5
     (C.D. Cal. Nov. 24, 2021) (same).

(dismissing UCL claim seeking restitution and disgorgement under *Sonner* where plaintiff's claim was "rooted in the same allegations" as her claims for damages); *Williams v. Apple, Inc.*, No. 19-CV-4700-LHK, 2020 WL 6743911, at *10 (N.D. Cal. Nov. 17, 2020) (dismissing UCL claim under *Sonner* where claim was duplicative of breach of contract claim for money damages). Accordingly, Plaintiff's UCL and unjust enrichment claims, as well as the request for injunctive relief in her contract claim, should be dismissed on this ground alone.

### D.    The Limitation of Liability Provision in Twitter's Terms of Service Bars Nearly All of Plaintiff's Claims

Twitter's Terms of Service contain a limitation of liability provision that precludes all of Plaintiff's non-statutory claims (*i.e.*, her contract, implied contract, and unjust enrichment claims). Plaintiff admits she is bound by Twitter's Terms of Service, because she alleges that "Twitter's relationship with its users is governed by the Twitter Terms of Service," Compl. ¶ 86, and that she had an active Twitter account from 2013 to 2019, *id.* ¶ 9; *see also id.* ¶ 64 (invoking Terms of Service); *id.* ¶ 83 (relying on choice of law provision in Terms of Service). Twitter's Terms of Service provide that "[t]o the maximum extent permitted by applicable law, the Twitter Entities shall not be liable for any indirect, incidental, special, consequential or punitive damages, or any loss of profits or revenues, whether incurred directly or indirectly, or any loss of data, use, goodwill, or other intangible losses, resulting from [an account holder's] access to or use of . . . the services." Ex. A at 8 (capitalization omitted). The Terms of Service further state that these limitations "shall apply to any theory of liability, whether based on [] contract, statute, [or] tort." *Id.* (capitalization omitted). The "applicable law" is California Civil Code § 1668, which allows for disclaimers of liability for non-statutory claims, except for fraud or willful misconduct. Cal. Civ. Code § 1668.

The damages Plaintiff seeks—such as the purported lost benefit of an unspecified bargain from having provided basic contact information, Compl. ¶ 94—are indirect, intangible, and consequential, and they are thus squarely foreclosed by the limitation of liability provision. *See* Ex. A at 8 (barring claims seeking "consequential" damages or recovery for "intangible losses" . . . "based on [] contract"); Compl. ¶¶ 95, 102 (seeking consequential damages in connection with

1    breach of contract and breach of implied contract claims); *see also Lewis Jorge Constr. Mgmt.,*

2    *Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004) (explaining that "direct" or

3    "general" damages are those "that flow directly and necessarily from a breach of contract").

4         Plaintiff has not (and cannot) challenge the enforceability of the limitation of liability

5    provision because such provisions "have long been recognized as valid in California" and there is

6    no basis to argue that the provision is unconscionable. *See Food Safety Net Servs. v. Eco Safe Sys.*

7    *USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012) (citation omitted).  This is especially true where,

8    as here, a company offers a non-essential service free of charge. *See Murphy v. Twitter, Inc.*, 60

9    Cal. App. 5th 12, 36 (2021) (collecting cases and noting that "[c]ourts have [] recognized service

10   providers that offer free services to Internet users may have a legitimate commercial need to limit

11   their liability and have rejected claims that such limitations are so one-sided as to be substantively

12   unconscionable").  Accordingly, courts routinely enforce limitation of liability provisions to bar

13   claims like those at issue here. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037-38 (N.D.

14   Cal. 2019) (dismissing breach of contract, implied contract, and quasi-contract claims under

15   limitation of liability clause); *Lewis v. YouTube*, LLC, 244 Cal. App. 4th 118, 124 (2015) (same).

16   Twitter's limitation of liability provision should therefore be enforced to bar Plaintiff's non-

17   statutory claims.

18        **E.    Plaintiff Fails to State a Breach of Contract Claim**

19        Plaintiff's breach of contract claim is premised on a handful of statements in Twitter's

20   Privacy Policy.  *See* Compl. ¶¶ 88-89.  But Plaintiff fails to adequately allege a breach of any of

21   these statements, to the extent they create contractual obligations at all.

22        Plaintiff first cites the statement, "We believe you should always know what data we collect

23   from you and how we use it, and that you should have meaningful control over both." *See* Compl.

24   ¶ 88.  But that statement has "no promissory language" obligating Twitter to take a particular

25   course of action.  *See Block v. eBay, Inc.*, 747 F.3d 1135, 1138-40 (9th Cir. 2014) (affirming

26   dismissal of breach of contract claim where relevant provision "contain[ed] no promissory

27   language" and thus, did not "constitute[] an enforceable promise"); *Flores v. United Parcel Serv.,*

28   *Inc.*, 768 F. App'x 677, 679 (9th Cir. 2019) (similar).  It is merely an aspirational statement of

1    puffery about what Twitter "believe[s]," and cannot serve as a basis for Plaintiff's contract claim.

2    *See S.W. Engr., Inc. v. Yeomans Chi. Corp.*, No. 09-CV-110 JLS (RBB), 2009 WL 3720374, at *3

3    (S.D. Cal. Nov. 3, 2009) (no binding obligation where statement did "not guarantee anything").

4         In any event, Plaintiff does not allege a breach of that, or any other, statement.  Plaintiff

5    asserts that she "did not 'know what data' Twitter collected" and "how Twitter used it."  *Id.* ¶ 91

6    (brackets omitted).  But Plaintiff's allegations about her subjective knowledge are irrelevant to the

7    question of whether Twitter breached the contract.  It did not.  Express provisions in the Privacy

8    Policy (which are conveniently omitted from the Complaint) not only inform account holders that

9    they must provide "information . . . like [] email address, [and] phone number," but also that

10   Twitter "uses [this] contact information to market to [them]."  *See* Ex. B at 4, 6.  In fact, there is

11   an entire section in the Privacy Policy dedicated to addressing Twitter's use of information

12   provided by account holders for advertising purposes, where Twitter plainly states, "We use the

13   information described in this Privacy Policy to help make our advertising more relevant to you, to

14   measure its effectiveness, and to help recognize your devices to serve you ads on and off Twitter."

15   *Id.* at 10.  And notably, there is even a provision in the Privacy Policy where Twitter addresses its

16   use of contact information for security purposes and for advertising purposes *in the same sentence*.

17   *Id.* at 3 ("We use this information for things like keeping your account secure *and* showing you . .

18   . ads." (emphasis added)).  Plaintiff cannot select certain statements from the Privacy Policy, and

19   ignore others.  *See DiCarlo v. MoneyLion, Inc.,* 988 F.3d 1148, 1157 (9th Cir. 2021) (quoting Cal.

20   Civ. Code § 1641) (holding that a contract "must be read as a whole, 'so as to give effect to every

21   part'"); *Nationwide Agribusiness Ins. v. George Perry & Sons, Inc.*, 338 F. Supp. 3d 1063, 1072

22   (E.D. Cal. 2018) (citation omitted) (noting that the intention of contracting parties cannot be

23   gleaned by relying on "some isolated portion" of the contract).

24        Similarly, Plaintiff alleges that "Twitter did not give its users 'control through your settings

25   to limit the data we collect from you and how we use it,'" Compl. ¶¶ 88, 91, but as disclosed in

26   the Privacy Policy, Twitter explicitly permits account holders to "opt out of interest-based

27   advertising," *see* Ex. B at 10.  Plaintiff does not allege that she opted out of interest-based

28   advertising or, if she had opted out, that she received interest-based advertisements in defiance of

1    her opt-out selection.  In fact, Plaintiff does not allege she received interest-based advertisements

2    *at all*.  Plaintiff's failure to allege any facts demonstrating that Twitter did not honor its promise

3    to give Plaintiff control over how Twitter used her data is fatal to her allegation of breach.

4          Finally, Plaintiff alleges that, contrary to statements in the Privacy Policy, "Twitter did

5    'share or disclose users personal data' without their 'consent.'"  Compl. ¶ 91 (brackets omitted);

6    *see also id.* ¶ 89 (quoting provision referring to an account holder's ability to "control whether

7    Twitter shares [their] personal data" with "certain third parties.").  But the Complaint is devoid of

8    any factual allegations of sharing or disclosure.  Instead, Plaintiff's allegations acknowledge that

9    Twitter only used account holder email addresses and phone numbers to *match* account holders

10   *internally* against information that advertisers already had in their possession.  *See id.* ¶ 26

11   ("Tailored Audiences allows advertisers to target specific groups of Twitter users by *matching* the

12   telephone numbers and email addresses that Twitter collects *to the advertisers' existing lists* of

13   telephone numbers and email addresses." (emphasis added)); *id.* ("Partner Audiences allows

14   advertisers to import *marketing lists from data brokers* like Acxiom and Datalogix to *match* against

15   the telephone numbers and email addresses collected by Twitter." (emphasis added)).  The

16   Tailored Audiences and Partner Audiences products simply do not involve any sharing or

17   disclosure of account holder information.  Rather, as Plaintiff's allegations show, advertisers

18   *already had* the same information for marketing.  *See id.* ¶ 26 (referring to "advertisers' existing

19   lists of telephone numbers and email addresses").  Twitter is alleged to have *matched* the contact

20   information that Plaintiff allegedly provided Twitter to the contact information she had already

21   provided to advertisers, in order to make Twitter's "advertising more relevant" to her, just as it

22   explained it would in its Privacy Policy.  Ex. B at 10.  Plaintiff thus fails to allege any breach, and

23   her contract claim should be dismissed.

24          ## F.     Plaintiff Fails to State a UCL Claim

25          Plaintiff's UCL claim should be dismissed because, in addition to Plaintiff's failure to

26   plead an "economic injury," *see supra* Section IV.B, Plaintiff fails to adequately allege actual

27

28

reliance and other critical elements of the claim, under either the "unlawful" or the "unfair" prongs—the only two prongs Plaintiff invokes.  *See* Compl. ¶¶ 104-10.

**Plaintiff Fails to Plead Actual Reliance**.  Plaintiff's UCL claim fails at the outset because Plaintiff does not plead actual reliance on a misrepresentation or omission.  Courts have held that the "actual reliance" requirement extends to UCL claims brought under the "unlawful" and "unfair" prongs when the underlying misconduct turns on alleged misrepresentations or omissions.  *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 n.9, 327 (2011) (explaining that the "actual reliance" requirement applies regardless of the particular UCL prong when plaintiff's "theory of the case" is that defendant "engaged in misrepresentations"); *see also, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 563-64 (N.D. Cal. 2019).  Here, Plaintiff relies on allegations that Twitter misrepresented its collection and use of contact information provided by account holders for security purposes.  *See, e.g.*, Compl. ¶¶ 61-63 (alleging that Twitter failed to comply with the Privacy Shield because it "deceptively used personal information collected for specific security-related purposes for advertising"); *id.* ¶ 107 (alleging "unfair" conduct based on "misrepresentations" and "failure to disclose the purposes for which it was collecting and utilizing" contact information).[9]  Plaintiff was therefore required to plead actual reliance.

But the Complaint contains no allegations related to reliance at all.  Plaintiff does not allege which purported misrepresentation she personally saw—in fact, she does not even allege which security feature she purportedly provided contact information for or when she did so, *see* Compl. ¶ 9, or that she read any statements in the Privacy Policy.  Nor does she allege she changed her conduct in any way as a result of any purported misrepresentation.  Instead, the Complaint vaguely alleges that Twitter's use of contact information for advertising "would be material to users when deciding whether to provide" that information.  *Id.* ¶¶ 41, 47, 54.  But that allegation conspicuously omits any reference to anyone's (much less Plaintiff's) *actual* reliance.  The UCL claim should be dismissed on this basis alone.  *See Ahern*, 411 F. Supp. 3d at 564 (dismissing UCL claim where

---

[9] *See also, e.g.*, Compl. ¶¶ 17, 105-06 (alleging that "FTC charged Twitter with engaging in deceptive acts or practices in violation of Section 5(a) of the FTC Act," and identifying FTC Act as predicate for UCL claim); *id.* ¶¶ 68-70 (alleging that Twitter breached its Privacy Policy and violated Cal. Bus. Prof. Code § 22576 by misrepresenting an account holder's ability to know and control how Twitter uses their information).

1  plaintiffs did not specify "which statements any of them saw or relied on"); *Williams v. Apple,*
2  *Inc.*, 449 F. Supp. 3d 892, 912-13 (N.D. Cal. 2020) (same).

3       **Plaintiff's "Unlawful" Claim Fails.**  Plaintiff's "unlawful" claim also fails because she
4  does not identify any viable predicate.  The claim is premised on violations of Section 5 of the
5  FTC Act and an order issued by the FTC in 2011 (the "Commission Order"), the Privacy Shield
6  and Frameworks, and California Business & Professions Code Section 22576.  *See* Compl. ¶ 105.
7  As noted above, all of these alleged violations are based on the same flawed assumption—that
8  Twitter misrepresented its collection and use of contact information provided by account holders
9  for security purposes.  *See id.* ¶¶ 17, 105-06; *id.* ¶¶ 61-63; *id.* ¶¶ 68-70.

10      But, as already explained, Twitter explicitly disclosed that contact information collected
11 from account holders could be used for advertising purposes.  Plaintiff's allegations of
12 misrepresentation and deception do not square with the numerous disclosures in Twitter's Privacy
13 Policy that directly address the conduct at issue here.  "[W]hen a defendant truthfully and clearly
14 discloses an alleged misrepresentation or omission, a plaintiff cannot plausibly state a claim for
15 relief." *Hammerling v. Google LLC*, No. 21-cv-090004-CRB, 2022 WL 2812188, at *5 (N.D. Cal.
16 July 18, 2022).  In *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012), for example,
17 the Ninth Circuit found no actionable misrepresentation or omission (including for purposes of an
18 "unlawful" UCL claim predicated on Section 5 of the FTC Act) where the plaintiff did not allege
19 that the advertisement at issue "contained any statements that were actually false." *Id.* at 1162-64,
20 1168.  This was so even though the advertisement did not expressly disclose an annual fee
21 associated with a credit card, because the Terms of the credit card disclosed the annual fee. *Id.* So
22 too here—Plaintiff does not identify *any* false statement and merely complains that Twitter did not
23 include an additional disclosure directly within the security flows, but no such disclosure was
24 required given Twitter's disclosures in the Privacy Policy, to which Plaintiff had already agreed.

25      Without any underlying misconduct, Plaintiff fails to sufficiently allege the predicate
26 violations needed to state an "unlawful" UCL claim.  *See Warren v. Whole Foods Mkt. Cal., Inc.,*
27 No. 21-CV-04577-EMC, 2022 WL 2644103, at *4 (N.D. Cal. July 8, 2022) (holding that "to state
28 a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate

1   violation"); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (dismissing

2   UCL claim where "alleged conduct" was insufficient to serve "as predicate acts under the unlawful

3   prong of the UCL"); *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019)

4   (holding that plaintiff was required to adequately plead breach of the defendant's privacy policy

5   in order to successfully state a UCL claim based on Section 22576).

6         **Plaintiff's "Unfair" Claim Fails.**  Plaintiff's claim under the "unfair" prong should also

7   be dismissed.  As an initial matter, that claim is premised on the same conduct underlying the

8   unlawful prong, and because Plaintiff's "unlawful" claim fails, "the unfair prong cannot survive

9   either." *Hammerling*, 2022 WL 2812188, at *15.  But in any event, Plaintiff fails to state an

10  "unfair" UCL claim under either of the two tests embraced by the Ninth Circuit and courts in this

11  district.  *See Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2021 WL 5113182, at *9 (N.D.

12  Cal. Nov. 3, 2021) (noting that the Ninth Circuit has "approved the use of two tests in consumer

13  actions"—the "tethering test" and the "balancing test" (citation omitted)).

14        Under the tethering test, a plaintiff must allege a violation of a "public policy … tethered

15  to specific constitutional, statutory, or regulatory provisions." *Id.*  Here, Plaintiff makes no effort

16  to do so.  Instead, she merely alleges that Twitter's purported use of her contact information for

17  advertising purposes was "unfair." *See* Compl. ¶ 107.  That is insufficient.  *See Klaehn v. Cali*

18  *Bamboo, LLC*, No. 19-CV-1498 TWR (KSC), 2021 WL 3044166, at *13 (S.D. Cal. June 14, 2021)

19  (dismissing UCL claim under tethering test where plaintiff "fail[ed] to identify any 'legislatively

20  declared policy'"), *aff'd*, No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022); *see also San*

21  *Miguel v. HP Inc.,* 317 F. Supp. 3d 1075, 1092 (N.D. Cal. 2018) (dismissing UCL claim under

22  tethering test where plaintiffs did not "identify [the] constitutional, regulatory or statutory

23  provision to which the allegations are tethered").  And to the extent Plaintiff relies on the "spirit

24  and letter" of the statutes and regulations addressed in her "unlawful" UCL claim, *see* Compl.

25  ¶¶ 104-06, such conclusory allegations are insufficient to state an "unfair" UCL claim, especially

26  where, as here, Plaintiff has not adequately alleged any underlying violations.  *See Schmitt v. SN*

27  *Servicing Corp.*, No. 21-CV-03355-WHO, 2021 WL 3493754, at *11 (N.D. Cal. Aug. 9, 2021)

28  (holding that "vague and conclusory" allegations concerning statutory violations are insufficient

to state a UCL claim under tethering test); *Price v. Apple, Inc.*, No. 21-cv-02846-HSG, 2022 WL 1032472, at *5 (N.D. Cal. Apr. 6, 2022) (dismissing UCL claim under tethering test where underlying claims were insufficiently pled).

Under the balancing test, a plaintiff must allege that "the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and that "the utility of the defendant's conduct" is outweighed by "the gravity of the harm to the alleged victim." *See Shuman,* 2021 WL 5113182, at *9 (citation omitted).  As discussed above, Plaintiff fails to sufficiently allege any cognizable harm, so there is nothing to balance.  *See Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1045 (N.D. Cal. 2021) (holding that where plaintiff had "not adequately pled a substantial injury," he failed to "state a claim under the unfair prong of the UCL"); *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211BZ, 2009 WL 2031765, at *5 (N.D. Cal. July 7, 2009) (dismissing UCL claim under balancing test where plaintiffs failed to allege that they "suffered any substantial injury").  And since Twitter expressly disclosed that it could use account holder contact information for advertising purposes, its conduct cannot be construed as "immoral, unethical, oppressive, [or] unscrupulous."  *See Davis*, 691 F.3d at 1170 (holding that conduct was not "immoral, unethical, oppressive, or unscrupulous" for purposes of balancing test where defendant "clearly disclosed" annual fee about which plaintiff complained).

**Disgorgement Is Unavailable**.  Finally, to the extent Plaintiff seeks non-restitutionary disgorgement, *see* Compl. ¶ 95, such relief "is unavailable in UCL actions."  *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018).

G.   **Plaintiff's Breach of Implied Contract and Unjust Enrichment Claims Should Be Dismissed**

"California does not recognize a separate cause of action for unjust enrichment," and the unjust enrichment claim should be dismissed on that ground alone.  *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021).  But even if the Court were to construe it as a quasi-contract claim for restitution, *see Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), Plaintiff's unjust enrichment and breach of implied contract claims should be dismissed for three reasons.  *First*, both claims are barred by the statute of limitations.  *Second*,

1  both claims are barred by the parties' express contract.  *Third*, Plaintiff fails to allege any breach

2  or actionable misrepresentation or omission sufficient to sustain either claim.

3  **The Statute of Limitations Bars These Claims.**  Plaintiff's implied contract and unjust

4  enrichment claims are barred by the applicable two-year statute of limitations.  *See Vint v.*

5  *Universal Studios Co. LLC,* No. CV 20-6787-GW-MRWX, 2021 WL 6618535, at *3-4 (C.D. Cal.

6  Apr. 29, 2021) (citing Cal. Civ. Proc. Code § 339(1)) (holding that the statute of limitations for

7  implied-in-fact contract claims is two years); *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th

8  Cir. 2019) (explaining that "[a] two-year statute of limitations applies to Wu's unjust enrichment

9  claim" and citing Cal. Civ. Proc. Code § 339(1)).  The alleged conduct that forms the basis of

10  Plaintiff's Complaint has been public knowledge since at least October 2019, and accordingly, the

11  statute of limitations for Plaintiff's implied contract and unjust enrichment claims has long since

12  expired.  *See* Ex. E (Oct. 8, 2019 Twitter Announcement); *see also* Ex. G ¶ 38 (FTC Complaint)

13  (referencing the "public reaction to Twitter's disclosure" of issue in late 2019); *see also* Compl.

14  ¶¶ 27, 39 45 (alleging conduct only through "September 2019").[10]

15  While Plaintiff includes tolling allegations, Compl. ¶ 71, tolling delays the accrual of a

16  claim only "when a plaintiff has no reason to suspect wrongdoing and cannot discover his or her

17  claims with reasonable diligence."  *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 652-53 (9th Cir.

18  2016).  Thus, the Ninth Circuit has held that where plaintiffs "could have discovered . . . their

19  claim" based on "highly publicized" information, they have "constructive notice" of their claims

20  and cannot toll the statute of limitations.  *See Orkin v. Taylor*, 487 F.3d 734, 741-42 (9th Cir.

21  2007); *see also Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 971 F.3d 1042, 1049-50 (9th Cir.

22  2020) (holding that the fraudulent concealment doctrine only "tolls a statute of limitation for the

23  time that a plaintiff cannot discover its claim").  Here, given that Twitter itself, along with several

[10] *See e.g.,* Ex. I (Oct. 10, 2019 Social Media Today Article Discussing Twitter Announcement); Ex. J (Oct. 9, 2019 Tech2 Article Discussing Twitter Announcement); Ex. K (Oct. 9, 2019 MarTech Article Discussing Twitter Announcement).  As explained in Twitter's concurrently filed RJN, these articles are subject to judicial notice because they are publicly available, not subject to reasonable dispute, and Twitter seeks only judicial notice of the fact of their publication in 2019, not of the truth of any factual matters asserted therein.  *See* RJN at 6; *Lifeway Foods, Inc. v. Millenium Prods., Inc.*, No. CV 16-7099-R, 2016 WL 7336721, at *1-3 (C.D. Cal. Dec. 14, 2016) (taking judicial notice of publicly available documents in order to evaluate statute of limitations issue).

news outlets, publicly disclosed the alleged conduct at issue in the Complaint, Plaintiff's implied contract and unjust enrichment claims cannot be tolled beyond the date of that disclosure.

**The Express Contract Bars These Claims.**  Neither implied contract claims, nor claims for unjust enrichment can "lie when an enforceable binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (citation omitted) (unjust enrichment); *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (implied contract).

Here, Plaintiff concedes that a binding agreement exists between Plaintiff and Twitter that defines the rights of the parties, Compl. ¶ 86, and invokes that agreement as a basis for her contract claim.  *See id.* ¶¶ 85-90.  That agreement, consisting of the Terms of Service and the Privacy Policy, covers Twitter's "collection and use" of information provided by account holders, *see* Ex. A at 2, and the subject matter of Plaintiff's claims thus fits squarely within its purview.  *See* Compl. ¶¶ 3-5 (acknowledging that "[t]his lawsuit concerns Twitter's . . . use of Plaintiff's and Class Members' telephone numbers and email addresses" that were provided to Twitter); *id.* ¶ 73 (defining proposed class as all individuals who "provided his or her telephone number(s) and/or email address(es) . . . to Twitter").  In fact, Twitter's use of contact information for both security purposes and advertising is specifically addressed in the Privacy Policy itself.  *See, e.g.*, Ex. B at 3 ("You can choose to share additional information with us like your email address, [and] phone number . . .We use this information for things like keeping your account secure and showing you . . . ads.").  As the Privacy Policy plainly governs the challenged conduct, and because Plaintiff's implied contract and unjust enrichment claims are "essentially a reiteration" of Plaintiff's breach of contract claim, those claims should be dismissed.  *See Morawski v. Lightstorm Ent., Inc.,* 599 F. App'x 779, 780 (9th Cir. 2015) (affirming dismissal of implied contract claim due to "the existence of a valid express contract"); *Hammerling*, 2022 WL 2812188, at *16 (dismissing implied contract claim where plaintiffs also alleged an "enforceable contract" based on Google's Terms of Service and Privacy Policy, which "govern[ed] the subject matter of Plaintiffs' implied contract claim—scope and purpose of data collection"); *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 125-27 (9th Cir. 2007) (dismissing unjust

1   enrichment claim where "there [was] no dispute about the existence or validity of the express

2   contract"); *DG3 Grp. (Holdings) Ltd. v. Lob.com, Inc.*, No. 19-CV-05287-SK, 2019 WL

3   13081489, at *6 (N.D. Cal. Dec. 4, 2019) (similar).

4          **Plaintiff Fails to State Either Claim.**   Even if Plaintiff's implied contract and unjust

5   enrichment claims were not barred by the statute of limitations and the express contract, they

6   should still be dismissed.  With respect to the implied contract claim, Plaintiff fails to allege a

7   breach in light of the actual representations that accompanied Twitter's collection of contact

8   information for security purposes.  Plaintiff claims that Twitter agreed to use this information

9   "solely" for "two-factor authentication, account recovery, and/or account re-authentication."

10  Compl. ¶ 98.  However, no such "solely" representation is present in *any* of the security flow

11  screenshots included in the Complaint.  *See id.* ¶¶ 35, 37-38, 43-44, 49-51; *cf. Hammerling*, 2022

12  WL 2812188, at *16 ("The question is whether Google breached anything that it promised, not

13  whether Google did anything it did not promise.").  Nor can it be read into them, given that

14  Twitter's Privacy Policy broadly and repeatedly states that contact information provided by

15  account holders may be used for both advertising and security purposes.  *See supra* Section II.A.

16         Similarly, with respect to Plaintiff's unjust enrichment claim, Plaintiff alleges that Twitter

17  "failed to disclose all the purposes for which it would use the Personal Information, and

18  misrepresented those uses."  Compl. ¶ 114.  Twitter's Privacy Policy disclosures contradict that

19  allegation and require dismissal of this claim too.  *See Hammerling*, 2022 WL 2812188, at *17

20  (dismissing unjust enrichment claim where plaintiffs "fail[ed] to plead with particularity that

21  Google committed an actionable misrepresentation or omission"); *Rojas-Lozano v. Google, Inc.*,

22  159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) ("[W]hen a plaintiff fails 'to sufficiently plead an

23  actionable misrepresentation or omission, his [or her] restitution claim must be dismissed.'"

24  (citation omitted)).

25         Ultimately, each of these claims fails for the same reason Plaintiff's entire case fails—

26  Twitter did exactly what it informed account holders it would do.

27

28

...

1   **V.      CONCLUSION**

2          The Court should grant Twitter's Motion because Plaintiff fails to allege any injury

3   sufficient for Article III standing or the injury elements of her claims; she cannot seek equitable

4   relief under *Sonner*; the limitation of liability provision bars her non-statutory claims; and she also

5   fails to adequately allege critical elements of each of her claims, as set forth above.

6

7   DATED:  August 15, 2022                    Respectfully submitted,

8                                              LATHAM & WATKINS LLP

9                                                */s/ Elizabeth L. Deeley*
                                               Elizabeth L. Deeley (CA Bar No. 230798)
10                                               *elizabeth.deeley@lw.com*
                                               Whitney B. Weber (CA Bar No. 281160)
11                                               *whitney.weber@lw.com*
                                               505 Montgomery Street, Suite 2000
12                                             San Francisco, California 94111-6538
                                               Telephone: +1.415.391.0600
13
                                               Michele D. Johnson (CA Bar No. 198298)
14                                               *michele.johnson@lw.com*
                                               650 Town Center Drive, 20th Floor
15                                             Costa Mesa, California 92626-1925
                                               Telephone: +1.714.755.8113
16
                                               Susan E. Engel (*Pro Hac Vice*)
17                                               *susan.engel@lw.com*
                                               Margaret A. Upshaw (*Pro Hac Vice*)
18                                               *maggie.upshaw@lw.com*
                                               555 Eleventh Street, NW, Suite 1000
19                                             Washington, D.C. 20004-1304
                                               Telephone: +1.202.637.3309
20
                                               *Attorneys for Defendant Twitter, Inc*
21

22

23

24

25

26

27

28