LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
  elizabeth.deeley@lw.com
Whitney B. Weber (CA Bar No. 281160)
  whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Michele D. Johnson (CA Bar No. 198298)
  michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.755.8113

Susan E. Engel (*Pro Hac Vice*)
  susan.engel@lw.com
Margaret A. Upshaw (*Pro Hac Vice*)
  maggie.upshaw@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN PRICE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 3:22-cv-03173-SK<br><br>**DEFENDANT TWITTER, INC.'S REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Hearing: November 14, 2022<br>Time: 9:30 a.m.<br>Location: Courtroom C – 15th Floor<br>Judge: Hon. Sallie Kim |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 14, 2022 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom C, 15th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102 Defendant Twitter, Inc. ("Twitter") through its undersigned counsel, will, and hereby does respectfully request that in connection with its Motion to Dismiss Plaintiff Lauren Price's ("Plaintiff") Class Action Complaint ("Complaint" or "Compl."), the Court consider the documents attached as Exhibits A-K to the accompanying Declaration of Susan E. Engel in Support of Twitter's Motion to Dismiss, filed concurrently herewith. The documents are properly considered by the Court on Twitter's Motion because they are subject to judicial notice under Federal Rule of Evidence 201 and/or incorporated by reference into the Complaint.

Dated: August 15, 2022

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Elizabeth L. Deeley

Elizabeth L. Deeley (CA Bar No. 230798)
 elizabeth.deeley@lw.com
Whitney B. Weber (CA Bar No. 281160)
 whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Michele D. Johnson (CA Bar No. 198298)
 michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.755.8113

Susan E. Engel (*Pro Hac Vice*)
 susan.engel@lw.com
Margaret A. Upshaw (*Pro Hac Vice*)
 maggie.upshaw@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Defendant Twitter, Inc. ("Twitter") respectfully requests that the Court consider certain documents submitted in connection with Twitter's Motion to Dismiss Class Action Complaint ("Motion"), as described below and attached to the Declaration of Susan E. Engel ("Engel Declaration") filed herewith.[1] These documents are properly considered on Twitter's Motion because they are subject to judicial notice under Federal Rule of Evidence 201 and/or incorporated by reference into and integral to the Complaint. The documents attached to the Engel Declaration include: (1) Twitter's Terms of Service that were effective May 25, 2018 ("2018 Terms"); (2) Twitter's Privacy Policies that were effective June 18, 2020 ("2020 Privacy Policy"); May 25, 2018; and May 17, 2012 (collectively, "Twitter's Privacy Policies"); (3) a public announcement made by Twitter on October 8, 2019 ("Twitter Announcement"); (4) Twitter's current security-flow disclosures; (5) the complaint filed by the Federal Trade Commission ("FTC") against Twitter on May 25, 2022 ("FTC Complaint"); (6) a statement issued by FTC Chair Lina M. Khan on May 25, 2022 ("FTC Chair Statement"); and (7) media articles discussing the Twitter Announcement.

## II. LEGAL STANDARD

In ruling on a motion to dismiss, the Court may look beyond the four corners of the complaint and consider matters properly subject to judicial notice and documents incorporated into the complaint by reference. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

The Court may take judicial notice of and properly consider for purposes of a motion to dismiss information "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also* Fed. R. Evid. 201(c) ("The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information."); Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage

---

[1] All Exhibit ("Ex.") references herein are to the exhibits attached to the concurrently filed Engel Declaration.

1  of the proceeding."). Thus, in considering a motion to dismiss under Federal Rule of Civil
2  Procedure 12(b)(6), a court may consider judicially noticeable material without converting the
3  motion into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir.
4  2003).

5  Additionally, the incorporation-by-reference doctrine "treats certain documents as though
6  they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002
7  (9th Cir. 2018). Among other things, the doctrine serves to preclude plaintiffs from "selecting
8  only portions of documents that support their claims, while omitting portions of those very
9  documents that weaken—or doom—their claims." *Id.* A document is incorporated by reference
10 in a pleading "if the plaintiff refers extensively to the document or the document forms the basis
11 of the plaintiff's claims." *Id.* (citations omitted). And that rule applies even where a complaint
12 does not explicitly mention a document by name or references only a portion of it. *Knievel v.
13 ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that incorporation by reference may apply
14 even where the plaintiff "does not explicitly allege the contents of that document in the complaint"
15 (citation omitted)); *see also Parrino v. FHP, Inc.*, 146 F. 3d 699, 706 (9th Cir. 1997) (incorporating
16 employee health plan where claims were premised upon plaintiff's coverage under the plan). The
17 doctrine "applies with equal force to internet pages as it does to printed material." *Knievel*, 393
18 F.3d at 1076.

### III. EXHIBITS A, B, and G ARE INCORPORATED BY REFERENCE

The Court may properly consider the 2018 Terms (Ex. A), the 2020 Privacy Policy (Ex. B), and the FTC Complaint (Ex. G) because they are incorporated by reference into the Complaint.[2] Not only are these documents "refer[red] to extensively" in the Complaint, Compl. ¶¶ 6, 30, 39-40, 53, 64-68, 83, 86-91, they are also "integral" to Plaintiff's claims. *See Ritchie*, 342 F.3d at 908; *Parrino*, 146 F.3d at 706 n.4.

---

[2] Twitter acknowledges the inconsistency in Plaintiff's simultaneous citation to the 2018 Terms and apparent citation to the 2020 Privacy Policy. *See* Compl. ¶¶ 64-67, 83, 88-89. However, as Plaintiff invokes those versions in her Complaint, Twitter similarly looks to those versions in its Motion.

Plaintiff is bringing a claim for breach of contract that is premised on an alleged breach of Twitter's Terms of Service and Privacy Policy. Compl. ¶ 86. As Plaintiff admits, "Twitter's relationship with its users is governed by the Twitter Terms of Service, [and] the Twitter Privacy Policy." *Id.*; *see also* Ex. A at 1 ("[T]he Twitter User Agreement comprises these Terms of Service, [and] our Privacy Policy."); *id.* ("By using the Services you agree to be bound by these Terms."). And the 2020 Privacy Policy covers Twitter's "collection and use" of information provided by account holders, which is the core conduct at issue in the Complaint. *See id.* at 2. Moreover, Plaintiff's claims under the Unfair Competition Law ("UCL") are expressly premised on statements made in the 2020 Privacy Policy and the 2018 Terms. *See* Compl. ¶¶ 64-70, 105-107; *see also id.* ¶ 83 (relying on choice of law provision in 2018 Terms).

It would be unfair for Plaintiff to invoke portions of the 2020 Privacy Policy and 2018 Terms to support her claims, while simultaneously suppressing the actual documents themselves. *See, e.g.*, *Newman v. Google LLC*, No. 20-CV-04011-LHK, 2021 WL 2633423, at *15 (N.D. Cal. June 25, 2021) (rejecting plaintiffs' "selective reliance" and holding that "Plaintiffs may not bring multiple claims on the basis of the parties' contracts and quote from those contracts . . . , but then object to Defendants' reliance on those same contracts in the motion to dismiss").[3] This is particularly true because the Terms contain a limitation of liability provision that impacts the validity of Plaintiff's claims. *See* Ex. A at 8; *Birdsong v. AT & T Corp.*, No. C12-6175 TEH, 2013 WL 1120783, at *2-3 (N.D. Cal. Mar. 18, 2013) (finding release agreement incorporated by reference). Likewise, the Privacy Policy contains disclosures about Twitter's use of contact information that doom Plaintiff's claims. *See, e.g.*, Ex. B at 3, 6. Accordingly, the Court may properly consider the 2018 Terms and 2020 Privacy Policy because they are incorporated by reference into the Complaint.

---

[3] *See also, e.g.*, *BRC Grp., LLC v. Quepasa Corp.*, C 09-01506 WHA, 2009 WL 2424669, at *2 (N.D. Cal. Aug. 7, 2009) (holding that agreement between plaintiff and defendant was incorporated by reference where "Plaintiff expressly relie[d] on the [] agreement" and it "form[ed] the basis of [plaintiff's] complaint"); *Neilson v. Union Bank of Cal.*, N.A., 290 F. Supp. 2d 1101, 1114 (C.D. Cal. 2003) ("contracts between [a defendant] and putative class members that provide the foundation for plaintiffs' claims" are properly considered on a motion to dismiss).

The FTC Complaint is also incorporated by reference into the Complaint. In addition to citing the FTC Complaint repeatedly, many of the allegations in the Complaint are lifted verbatim from the FTC Complaint. *Compare, e.g.*, Compl. ¶¶ 25-27, 33-38, 42-44, *with* Ex. G ¶¶ 25-27, 30-35, 39-41. The Court may therefore consider the FTC Complaint under the incorporation-by-reference doctrine.

## IV. EXHIBITS A THROUGH K ARE SUBJECT TO JUDICIAL NOTICE

The Court may also take judicial notice of the contents of the 2018 Terms (Ex. A), Twitter's Privacy Policies (Exs. B-D), the Twitter Announcement (Ex. E), Twitter's current security-flow disclosures (Ex. F), the FTC Complaint (Ex. G), the FTC Chair Statement (Ex. H), and media articles discussing the Twitter Announcement (Exs. I-K), because they are publicly available documents that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Furthermore, Twitter seeks judicial notice of "the existence and contents" of these documents, rather than "the truth of the matters asserted therein." *See Coffee v. Google, LLC*, 20-cv-03901-BLF, 2021 WL 493387, at *3-4 (N.D. Cal. Feb. 10, 2021).

The 2018 Terms and Twitter's Privacy Policies are all readily available on Twitter's website. Courts routinely take judicial notice of similar documents. *See, e.g.*, *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (collecting cases in which courts have taken judicial notice of publicly available policies and agreements); *In re Google, Inc. Priv. Pol'y Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *3-4 (N.D. Cal. Dec. 28, 2012) (taking judicial notice of "past and present Terms of Service and Privacy Policies" as "matter[s] of public record"); *Datel Holdings LTD v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010) (taking judicial notice of terms of use available online). While Plaintiff appears to refer only to the 2020 Privacy Policy in the Complaint, other Privacy Policies from the Class Period are noticeable to demonstrate that Twitter consistently disclosed that it uses contact information provided by account holders for advertising and marketing purposes. *See* Ex. C at 1 (2018 Privacy Policy) (stating that Twitter uses "email address [and] phone number" to show account holders "more relevant . . . ads"); *id.* at

4 ("Twitter also uses your contact information to market to you."); Ex. D at 2 (2012 Privacy Policy) ("We may use your contact information to send you information about our Services or to market to you.").

Twitter's current security-flow disclosures are also publicly available on Twitter's website and may be considered by the Court. *See, e.g., Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617-618 (N.D. Cal. 2021) (taking judicial notice of "publicly available Google webpages"). In addition to the fulsome disclosures in Twitter's Privacy Policy, the current security-flow disclosures now remind account holders that their contact information will be used for interest-based advertising and provide an opt-out option within the security flow itself. Ex. F at 5. Thus, these updated disclosures show that Plaintiff does not face a risk of repeated injury based on the prior disclosures alleged in the Complaint. *Compare* Ex. F, *with* Compl. ¶¶ 35-38.

The FTC Complaint and FTC Chair Statement are "public records, which are proper subjects of judicial notice." *Calhoun*, 526 F. Supp. 3d at 617 (taking judicial notice of FTC complaint); *see also In re Google Priv. Pol'y,* 2012 WL 6738343, at *3-4 (taking judicial notice of FTC complaint and FTC press release). As the Complaint relies heavily on allegations taken from the FTC Complaint, *compare, e.g.*, Compl. ¶¶ 25-27, 33-38, 42-44, *with* Ex. G ¶¶ 25-27, 30-35, 39-41, both the complete FTC Complaint and FTC Chair Statement are noticeable to show that the FTC Complaint did not allege the same type of claim as Plaintiff does, and that the FTC Chair acknowledged that Twitter's Privacy Policy made disclosures about Twitter's use of contact information. *See* Ex. G ¶¶ 60-75 (alleging only deception, rather than unfairness, claims against Twitter under the FTC Act, which do not require any showing of injury);[4] Ex. H at 2 (acknowledging that Twitter's Privacy Policy did disclose "that contact information would be used for advertising purposes").

---

[4] *See* 15 U.S.C. § 45(a)(1) (establishing that both "unfair" and "deceptive" acts or practices are unlawful); *id.* § 45(n) (providing that the FTC may not declare an act or practice unlawful as "unfair" "unless the act or practice causes or is likely to cause substantial injury to consumers"); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012) (articulating relevant test for each prong and indicating that injury inquiry applies only to "unfair" practices).

1    As for the Twitter Announcement, and media articles discussing the Twitter
2 Announcement, courts regularly take judicial notice of "publications and information on publicly
3 accessible websites . . . to show what information was in the public realm" at a given time. *See*
4 *DoorDash, Inc. v. City and Cnty. of San Francisco*, 21-CV-05502-EMC, 2022 WL 867254, at *6
5 (N.D. Cal. Mar. 23, 2022) (citation omitted); *Pardi v. Tricida, Inc.*, 21-CV-00076-HSG, 2022 WL
6 3018144, at *4 (N.D. Cal. July 29, 2022) (taking judicial notice of publication to show that certain
7 "information was disclosed in the market" and taking judicial notice of press release, explaining
8 that "[c]ourts in the Ninth Circuit routinely take judicial notice of press releases"). Here, these
9 documents may be considered by the Court to demonstrate that the conduct at issue in the
10 Complaint was publicly known as of October 8, 2019, thus negating any argument that applicable
11 statutes of limitations have been tolled. *See* Compl. ¶¶ 71-72; *Lifeway Foods, Inc. v. Millenium*
12 *Prods., Inc.*, No. CV 16-7099-R, 2016 WL 7336721, at *1-3 (C.D. Cal. Dec. 14, 2016) (taking
13 judicial notice of publicly available documents in order to evaluate statute of limitations issue).
14    Accordingly, Exhibits A through K are all appropriately considered by the Court.

## V.  CONCLUSION

For the foregoing reasons, Twitter respectfully requests that the Court consider the exhibits attached to the Engel Declaration submitted in connection with its Motion to Dismiss.

DATED: August 15, 2022                Respectfully submitted,

LATHAM & WATKINS LLP

 */s/ Elizabeth L. Deeley*_____
Elizabeth L. Deeley (CA Bar No. 230798)
 elizabeth.deeley@lw.com
Whitney B. Weber (CA Bar No. 281160)
 whitney.weber@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Michele D. Johnson (CA Bar No. 198298)
 michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.755.8113

Susan E. Engel (*Pro Hac Vice*)

*susan.engel@lw.com*
Margaret A. Upshaw (*Pro Hac Vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc*