1   LATHAM & WATKINS LLP
    Elizabeth L. Deeley (CA Bar No. 230798)
2    *elizabeth.deeley@lw.com*
    Whitney B. Weber (CA Bar No. 281160)
3    *whitney.weber@lw.com*
    505 Montgomery Street, Suite 2000
4   San Francisco, California 94111-6538
    Telephone: +1.415.391.0600
5
    Michele D. Johnson (CA Bar No. 198298)
6    *michele.johnson@lw.com*
    650 Town Center Drive, 20th Floor
7   Costa Mesa, California 92626-1925
    Telephone: +1.714.755.8113
8
    Susan E. Engel (*Pro Hac Vice*)
9    *susan.engel@lw.com*
    Margaret A. Upshaw (*Pro Hac Vice*)
10   *maggie.upshaw@lw.com*
    555 Eleventh Street, NW, Suite 1000
11  Washington, D.C. 20004-1304
    Telephone: +1.202.637.3309
12
    *Attorneys for Defendant Twitter, Inc.*
13

14              **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16               **SAN FRANCISCO DIVISION**

17
    LAUREN PRICE, BILLY MOSES,           Case No. 3:22-cv-03173-SK
18  JAMISHA PRYOR, PETER
    GIANAKOPOULOS, SHEILA GARCIA,        **DEFENDANT TWITTER, INC.'S**
19  ALYSSA SCHAFFER, CHRISTINA           **NOTICE OF MOTION AND MOTION**
    MCCLELLAN, and JEFFERY ROBINSON      **TO DISMISS AMENDED**
20  individually and on behalf of all others   **CONSOLIDATED CLASS ACTION**
    similarly situated,                  **COMPLAINT; MEMORANDUM OF**
21                                        **POINTS AND AUTHORITIES IN**
                    Plaintiffs,           **SUPPORT THEREOF**
22
    v.                                   Hearing:   May 1, 2023
23                                        Time:      9:30 a.m.
    TWITTER, INC.,                        Location:  Courtroom C – 15th Floor
24                                        Judge:     Hon. Sallie Kim
                    Defendant.
25

26

27

28

TWITTER, INC.'S MOTION TO DISMISS AMENDED
                                                      CONSOLIDATED COMPLAINT
                                                      CASE NO. 3:22-cv-03173-SK

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2023 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom C, 15th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102 Defendant Twitter, Inc. ("Twitter") through its undersigned counsel, will, and hereby does, move to dismiss Plaintiffs Lauren Price, Billy Moses, Jamisha Pryor, Peter Gianakopoulos, Sheila Garcia, Alyssa Schaffer, Christina McClellan, and Jeffrey Robinson's ("Plaintiffs") Amended Consolidated Class Action Complaint ("Amended Complaint" or "Am. Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Twitter's Motion to Dismiss ("Motion") is based on this Notice, the supporting Memorandum of Points and Authorities, the Declaration of Susan E. Engel and the accompanying Request for Judicial Notice and Incorporation by Reference, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

## ISSUES TO BE DECIDED

(1) Whether the Court should dismiss Plaintiffs' Amended Complaint because Plaintiffs fail to allege a particularized, concrete injury sufficient to establish Article III standing to bring their claims.

(2) Whether the Court should dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), because Plaintiffs also fail to state each of their claims.

Dated: March 1, 2023                    Respectfully submitted,

                                        LATHAM & WATKINS LLP
                                        By:  */s/ Elizabeth L. Deeley*
                                        Elizabeth L. Deeley (CA Bar No. 230798)
                                         *elizabeth.deeley@lw.com*
                                        Whitney B. Weber (CA Bar No. 281160)
                                         *whitney.weber@lw.com*
                                        505 Montgomery Street, Suite 2000
                                        San Francisco, California 94111-6538
                                        Telephone: +1.415.391.0600

Michele D. Johnson (CA Bar No. 198298)
 *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.755.8113

Susan E. Engel (*Pro Hac Vice*)
 *susan.engel@lw.com*
Margaret A. Upshaw (*Pro Hac Vice*)
 *maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.3309

*Attorneys for Defendant Twitter, Inc.*

1

**TABLE OF CONTENTS**

2

**Page**

3      I.      INTRODUCTION ................................................................................................. 1

4      II.     BACKGROUND .................................................................................................. 3

5              A.      This Court Dismissed the Original Complaint........................................... 3

6              B.      Plaintiffs Filed an Amended Complaint .................................................... 4

7      III.    LEGAL STANDARDS ....................................................................................... 5

8      IV.     ARGUMENT ...................................................................................................... 6

9              A.      Plaintiffs Still Lack Article III and UCL Standing ................................... 6

10                     1.      Plaintiffs Do Not Allege a Concrete Injury ................................... 6

11                     2.      Plaintiffs Do Not Allege an Imminent Future Injury...................... 9

12             B.      Plaintiffs' Amendments Fail to Cure the Other Deficiencies this
13                     Court Identified........................................................................................ 11

14                     1.      The Privacy Policy Disclosures Defeat All of Plaintiffs'
                              Claims ......................................................................................... 11

15                     2.      Plaintiffs Still Fail to Sufficiently Allege Their Implied
16                             Contract and Unjust Enrichment Claims in the Alternative
                              to Their Breach of Contract Claim............................................... 15

17                     3.      Plaintiffs' Requests for Equitable Relief Are Still Barred by
18                             *Sonner* ....................................................................................... 16

19             C.      Plaintiffs' Amendments Also Fail to Cure Additional Deficiencies
                       Twitter Identified .................................................................................... 17

20                     1.      Plaintiffs Still Fail to State a Claim for Breach of Contract
21                             for Additional Reasons ............................................................... 17

22                     2.      Plaintiffs Still Fail to State a UCL Claim ................................... 18

23                     3.      Plaintiffs' Implied Contract and Unjust Enrichment Claims
                              Are Still Time-Barred by the Applicable Two-Year Statute
24                             of Limitations.............................................................................. 20

25                     4.      Plaintiffs Still Fail to State Implied Contract and Unjust
                              Enrichment Claims...................................................................... 22

26             D.      Further Amendment Would Be Futile ...................................................... 23

27     V.      CONCLUSION.................................................................................................. 24

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1305 Ridgewood, LLC v. Athas Capital Group, Inc.*,
No. 21-CV-04647 SBA, 2022 WL 4139514 (N.D. Cal. Sept. 12, 2022) ...............................20

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ........................................................................................17

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ...............................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................6

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ...........................................................................................15

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................6

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014) .........................................................................................14

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) .........................................................................................23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...........................................................................................................10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...........................................................................................................10

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................................................8

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................................................................................11, 20

*Day v. GEICO Cas. Co.*,
580 F. Supp. 3d 830 (N.D. Cal. 2022) ...............................................................................15

*Elation Sys., Inc. v. Fenn Bridge LLC*,
71 Cal. App. 5th 958 (2021) ............................................................................................18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Finney v. Ford Motor Co.*,
    No. 17-CV-06183-JST, 2018 WL 2552266 (N.D. Cal. June 4, 2018) ....................................21

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) ........................................................................................................21

*Freund v. HP, Inc.*,
    No. 22-CV-03794-BLF, 2023 WL 187506 (N.D. Cal. Jan. 13, 2023) .................................16

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..............................................................................................6

*Great P. Sec. v. Barclays Capital, Inc.*,
    743 F. App'x 780 (9th Cir. 2018) ........................................................................................19

*Guzman v. Polaris Industries Inc.*,
    49 F.4th 1308 (9th Cir. 2022) ..............................................................................................16

*H.B. Filmes, Ltda. v. CBS, Inc.*,
    98 F. App'x 596 (9th Cir. 2004) ..........................................................................................21

*Hammerling v. Google LLC*,
    No. 21-CV-09004-CRB, 2022 WL 2812188 (N.D. Cal. July 18, 2022) ........................ *passim*

*Hickcox-Huffman v. US Airways, Inc.*,
    855 F.3d 1057 (9th Cir. 2017) ..............................................................................................18

*Huynh v. Quora, Inc.*,
    No. 18-CV-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..............................8

*In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    No. 3:18-MD-2828-SI, 2020 WL 1495304 (D. Or. Mar. 27, 2020) ......................................9

*In re Jetblue Airways Corp. Priv. Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ...................................................................................9

*Ji v. Naver Corp.*,
    No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022).............................7

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ...............................................................................................5

*Lewis v. Casey*,
    518 U.S. 343 (1996)..............................................................................................................10

*In re LinkedIn User Priv. Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) .................................................................................8

*Loh v. Future Mot., Inc.*,
    No. 5:21-CV-06088-EJD, 2022 WL 2668380 (N.D. Cal. July 11, 2022) ............................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

TWITTER, INC.'S MOTION TO DISMISS AMENDED
CONSOLIDATED COMPLAINT
CASE NO. 3:22-cv-03173-SK

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................6, 10

*Mersnik v. USProtect Corp.*,
    No. C-06-03993 RMW, 2007 WL 2669816 (N.D. Cal. Sept. 7, 2007) ...................................22

*Moore v. Centrelake Medical Grp., Inc.*,
    83 Cal. App. 5th 515 (2022) .........................................................................8, 9

*Moran v. Bondi Sands (USA) Inc.*,
    No. 21-CV-07961-JSW, 2022 WL 1288984 (N.D. Cal. Apr. 29, 2022) ...............................17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .......................................................................................9, 10

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal. 4th 811 (2011) .................................................................................17, 18

*Orkin v. Taylor*,
    487 F.3d 734 (9th Cir. 2007) .................................................................................21

*Ramirez v. HV Glob. Mgt. Corp.*,
    No. 21-CV-09955-BLF, 2023 WL 322888 (N.D. Cal. Jan. 19, 2023) ...............................19

*Raynaldo v. Am. Honda Motor Co.*,
    No. 21-CV-05808-HSG, 2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ...............................17

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) .........................................................................16

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    471 F. Supp. 3d 981 (N.D. Cal. 2020) .........................................................................22

*Saroya v. Univ. of the Pacific*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) .........................................................................15

*Schrader Cellars, LLC v. Roach*,
    No. 21-CV-01431-SK, 2021 WL 9816545 (N.D. Cal. June 10, 2021) ...............................23

*Shuman v. SquareTrade Inc.*,
    No. 20-cv-02725-JCS, 2021 WL 5113182 (N.D. Cal. Nov. 3, 2021) ...............................20

*Sidhu v. Bayer Healthcare Pharm. Inc.*,
    No. 22-CV-01603-BLF, 2022 WL 17170159 (N.D. Cal. Nov. 22, 2022) ...............................19

*United States ex rel. Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) .........................................................................6, 22

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .........................................................................16, 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

TWITTER, INC.'S MOTION TO DISMISS AMENDED
CONSOLIDATED COMPLAINT
CASE NO. 3:22-cv-03173-SK

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................................6

*Stanford Health Care v. USAble Mut. Ins. Co.*,
    548 F. Supp. 3d 909 (N.D. Cal. 2021) ...............................................................20

*Tabler v. Panera LLC*,
    No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019)............10

*Taleshpour v. Apple Inc.*,
    549 F. Supp. 3d 1033 (N.D. Cal. 2021) .............................................................20

*Total Coverage, Inc. v. Cendant Settle. Services Group, Inc.*,
    252 F. App'x 123 (9th Cir. 2007) ......................................................................15

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)..........................................................................................6

*Varga v. Wells Fargo Bank, N.A.*,
    796 F. App'x 430 (9th Cir. 2020) ......................................................................17

*Wesch v. Yodlee, Inc.*,
    No. 20-CV-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021)................8

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .............................................................................5

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ..........................................................18, 19

*Wu v. Sunrider Corp.*,
    793 F. App'x 507 (9th Cir. 2019) ......................................................................20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)......18, 19

**STATUTES**

Cal. Bus. & Prof. Code
    § 17204.................................................................................................................7
    § 22576...............................................................................................................19

Cal. Civ. Proc. Code § 339(1)...................................................................................20, 21

FTC Act § 5 ...................................................................................................................19

1

**RULES**

2
Fed. R. Civ. Proc.

3
    9(b) .................................................................................................................. *passim*
    12(b)(1) ...........................................................................................................5
4
    12(b)(6) ...........................................................................................................6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

TWITTER, INC.'S MOTION TO DISMISS AMENDED
CONSOLIDATED COMPLAINT
CASE NO. 3:22-cv-03173-SK

## I.      INTRODUCTION

This Court dismissed the original Complaint in this case for lack of Article III standing, and in doing so, it highlighted "additional deficiencies" in the Complaint, including the Complaint's failure to grapple with Twitter's express disclosures that it uses account holder contact information for advertising purposes.  Order Granting Motion to Dismiss ("MTD Order"), Dkt. 50.  Plaintiffs' Amended Complaint does nothing to cure these deficiencies.  Plaintiffs do not and cannot show that they suffered any injury or that Twitter misrepresented its use of Plaintiffs' contact information.  The case should be dismissed without leave to amend.

**Standing**.  Plaintiffs still fail to allege any concrete, particularized injury for purposes of Article III or UCL standing.  The Amended Complaint contains the same conclusory diminution-in-value and benefit-of-the-bargain allegations this Court already rejected.  Plaintiffs add allegations that they "valued" their contact information and would not have shared it unless Twitter provided them with "value in exchange" for the information.  *See, e.g.*, Am. Compl. ¶ 53.  But those allegations are untethered to any actual harm to Plaintiffs.  Plaintiffs still fail to allege that their information *lost* value from Twitter's use of it, or that they had any reason to expect that Twitter would pay them for their basic contact information.  Nor do Plaintiffs establish any real and immediate threat of repeated injury, as required for standing to seek injunctive relief.  Instead, Plaintiffs add irrelevant allegations about unrelated security incidents and Twitter's recent acquisition, without attempting to draw a connection between those allegations and any future risk of repeated injury to them personally.  Plaintiffs' Amended Complaint thus fails as a threshold matter under Article III.

**Identified Deficiencies**.  The Amended Complaint still contains the three additional deficiencies this Court identified, which defeat each of Plaintiffs' claims on the merits.  MTD Order at 9-10.  *First*, Plaintiffs cannot state any claim given the express disclosures in Twitter's Privacy Policy stating that Twitter may use contact information for advertising purposes.  Those disclosures defeat Plaintiffs' UCL, implied contract, and unjust enrichment claims, because they belie Plaintiffs' allegations that Twitter misrepresented how it would use account holder contact information.  Plaintiffs' contract claim likewise fails, because Plaintiffs do not identify any

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

1  promise that Twitter would *not* use contact information for advertising purposes—to the contrary,

2  the Privacy Policy states Twitter *did* use contact information for both security and advertising

3  purposes.

4      *Second*, with respect to Plaintiffs' implied contract and unjust enrichment claims, Plaintiffs

5  do not even attempt to allege facts showing the express contract is unenforceable or invalid, as

6  required to state those claims.  MTD Order at 10.

7      *Third*, with respect to Plaintiffs' claims for equitable relief, including the entirety of

8  Plaintiffs' UCL and unjust enrichment claims, Plaintiffs' only new allegation—that it is

9  "reasonable" to seek equitable relief in light of Twitter's recent acquisition—does not even purport

10  to show that Plaintiffs lack an adequate remedy at law for their alleged injuries.

11      **Additional Deficiencies**.  The Amended Complaint fails to address additional deficiencies

12  Twitter raised in its first motion to dismiss.  Plaintiffs' contract claim fails because Plaintiffs allege

13  no breach and no cognizable injury to support that claim; Plaintiffs' UCL claim is inadequately

14  pled under any standard, and especially under the applicable Rule 9(b) standard; and Plaintiffs'

15  implied contract and unjust enrichment claims are both barred by the two-year statute of limitations

16  and insufficiently pled on the merits as well.

17      Ultimately, Plaintiffs cannot transform Twitter's use of voluntarily-provided contact

18  information for advertising purposes into a viable cause of action, given the express statements in

19  Twitter's Privacy Policy that Twitter would use account holder contact information for "keeping

20  your account secure and showing you more relevant . . . ads."  Am. Compl., Ex. 1 ("Privacy

21  Policy") at 1, Dkt. 56-1.[1]  The Amended Complaint should be dismissed without leave to amend.

22

23

24

25  [1] Plaintiffs do not allege when they provided their contact information through a security flow, and

26  they rely only on the 2018 Privacy Policy.  *See* Am. Compl. ¶ 88-89 & n.13, 135-36, 142.  Twitter accordingly relies on the same version.  Regardless, throughout the Class Period, Twitter disclosed

27  that it uses contact information provided by account holders for advertising and marketing purposes.  *See, e.g.*, Engel Decl. iso Mot. to Dismiss Am. Consol. Class Action Compl. ("Engel

28  Decl."), Ex. B at 2 (2012 Privacy Policy) ("We may use your contact information . . . to market to you . . .").

## II.      BACKGROUND

### A.      This Court Dismissed the Original Complaint

The first Complaint in this action, brought by Plaintiff Lauren Price ("Price"), alleged that from May 2013 to September 2019, Twitter improperly used basic contact information that account holders provided in connection with certain security features for advertising purposes as well.  *See, e.g.*, Compl. ¶¶ 23-54, Dkt. 1.  Twitter moved to dismiss the Complaint for lack of Article III standing and for failure to state a claim.  The Complaint failed to allege any concrete and particularized harm from Twitter's use of contact information to provide more relevant advertisements.  *See* Mot. to Dismiss at 6-10 ("MTD"), Dkt. 29.  Additionally, the relevant Terms of Service and Privacy Policies disclose that Twitter uses contact information provided by account holders for advertising purposes.  *See* MTD at 3.  For example, the Privacy Policy highlights as a "key thing[]" on its first page that account holders "can choose to share" "email address [and] phone number" with Twitter and that this information will be used for "keeping your account secure and showing you more relevant . . . ads."  Privacy Policy at 1.  Additionally, Section 1.3 of the Privacy Policy explains that Twitter "use[s] [account holder] contact information, such as your email address and phone number" both for security purposes and "to personalize [Twitter's] services" and "market to" account holders.  *Id.* at 4.  Section 2.6 of the Privacy Policy likewise states that Twitter "use[s] the information described in this Privacy Policy to help make our advertising more relevant to you."  *Id.* at 8-9.  Twitter also informs account holders that they can both use a "consumer choice tool" (with an accompanying hyperlink) to "opt out of interest-based advertising," *id.* at 9, and adjust their settings to determine whether Twitter shows them "interest-based ads on and off Twitter," *id.* at 10.

On December 6, 2022, the Court dismissed the Complaint in its entirety for lack of Article III standing and statutory standing under the UCL.  *See generally* MTD Order.  The Court rejected the Complaint's allegations of diminution in value of Price's contact information, explaining that Price did not even allege "that she could sell her phone number and email address or that it otherwise had economic value to *her*," and thus "fail[ed] to allege any concrete injury" from "Twitter's use of her phone number and/or email address."  *Id.* at 6-8 (emphasis in original).  In

doing so, the Court noted that the Complaint did not allege that Twitter *disclosed* contact information, as opposed to *matching* it internally.  *See id.* at 8; *see also id.* at 6 n.1 (noting "Plaintiff's failure to allege that Twitter *disclosed* her" contact information to advertisers); Mot. to Dismiss Hearing Tr. ("Tr.") 7:7-9, Dkt. 52 (Plaintiff's counsel conceding that Complaint does not allege "that Twitter sent the list of email addresses or phone numbers to these advertisers"). The Court also found that Price failed to allege an injury in fact in connection with her breach of contract claim, because she lacked any "expectation interest in the economic value of" her contact information.  *Id.* at 7 (citation omitted).  Finally, the Court rejected Price's argument that a breach of contract alone, without any associated injury in fact, is sufficient for Article III standing.  *Id.* at 8-9.  The Court dismissed the Complaint with leave to amend.  *Id.*

To provide "guidance for amendment," the Court also identified three "additional deficiencies."  *Id.* at 9.  *First*, Price had no answer to the Privacy Policy's disclosures "that Twitter would use Plaintiff's email address and phone number, as well as other information, to show Plaintiff more relevant advertisements and would provide Plaintiff an opportunity to opt out of Twitter's use of her personal information."  *Id.* at 9-10.  *Second*, Price did not "clearly allege" facts showing that "the contract may be unenforceable or invalid," even though a plaintiff may not plead "the existence of an enforceable contract and simultaneously maintain a quasi-contract claim," *e.g.*, implied contract and unjust enrichment claims.  *Id.* at 10 (citation omitted).  *Finally*, Price failed to "allege facts to support her contention that she lacks an adequate remedy at law," as required to seek equitable relief.  *Id.*

### B.    Plaintiffs Filed an Amended Complaint

In January 2023, the Court consolidated the *Price* action with two other putative class actions alleging identical claims, *see* Dkt. 53, and on February 6, 2023, Price, along with seven consolidated Plaintiffs, filed their Amended Consolidated Class Action Complaint ("Amended Complaint").  *See* Dkt. 56.

The Amended Complaint remains fundamentally the same as the original Complaint previously dismissed by this Court, with just three new sets of allegations.  *First*, Plaintiffs allege the same theories of injury (diminution in value of their personal information and lost benefit of

the bargain), *see* Am. Compl. ¶¶ 147, 161, but Plaintiffs now also allege that they "valued" their contact information and "would not have provided [that information] without receiving value in exchange had they known this personal information would be used for marketing purposes." *Id.* ¶ 53; *see also id.* ¶¶ 10, 13, 16, 19, 22, 25, 28, 31 (identical allegations for each Plaintiff); *id.* ¶ 56 (similar). They identify blogposts and webpages recommending that companies offer small perks to encourage customers to provide their contact information, and they allege that companies derive value from obtaining contact information. *Id.* ¶¶ 54-55.

*Second*, Plaintiffs still do not allege facts showing disclosure of their information to third parties, but they now allege that Twitter's use of their "contact information" is governed by Section 3.1 of the Privacy Policy regarding the circumstances in which Twitter shares or discloses personal data to third parties. *Id.* ¶¶ 91, 136. Plaintiffs also include allegations that the term "contact information" in Section 1.3 is limited only to the "personal data" provided at account creation, described in Section 1.1. *Id.* ¶¶ 97-100; *see also id.* ¶¶ 139-44 (identical allegations).

*Finally*, the Amended Complaint adds allegations regarding prior security incidents unrelated to the conduct at issue in this case, *see id.* ¶¶ 105-12, as well as allegations concerning changes at the company in the wake of Twitter's recent acquisition by Elon Musk. *Id.* ¶¶ 113-19. These allegations do not relate to Twitter's use of contact information for advertising purposes, but Plaintiffs assert that these allegations provide "reasonable grounds" for Plaintiffs to seek "injunctive and equitable relief." *Id.* ¶ 119.

The Amended Complaint includes no allegations as to the unenforceability or invalidity of the Privacy Policy, although it continues to include implied contract and unjust enrichment claims.

## III.   LEGAL STANDARDS

**Rule 12(b)(1).** A court must dismiss claims where a plaintiff fails to establish Article III standing. *White v. Lee*, 227 F.3d 1214, 1242, 1244 (9th Cir. 2000). When a defendant challenges Article III standing based on the face of the complaint, the Court accepts the plaintiff's allegations as true and "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

1       **Rule 12(b)(6).**  A complaint must plead "sufficient factual matter, accepted as true, to 'state

2   a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

3   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court need not "accept as true

4   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

5   inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

6   Taking only "well-pleaded factual allegations" as true, a court "determine[s] whether they

7   plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

8       **Rule 9(b).**  Claims based on allegations of fraud are subject to a heightened pleading

9   standard.  "To satisfy this requirement, a pleading must identify 'the who, what, when, where, and

10   how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly

11   fraudulent] statement, and why it is false.'"  *United States ex rel. Silingo v. WellPoint, Inc.*, 904

12   F.3d 667, 677 (9th Cir. 2018) (alteration in original) (citation omitted).

13   **IV.   ARGUMENT**

14       **A.   Plaintiffs Still Lack Article III and UCL Standing**

15       This Court dismissed the original Complaint in this action for failure to allege a concrete

16   injury sufficient for Article III and UCL standing.  The Amended Complaint fails to cure that

17   defect and should be dismissed.

18       **1.   Plaintiffs Do Not Allege a Concrete Injury**

19       In its order dismissing the original Complaint, this Court reiterated the fundamental Article

20   III requirement that a plaintiff must allege facts demonstrating a "concrete and particularized"

21   injury in fact.  MTD Order at 5 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

22   That injury "must actually exist," and be "'real,' and not 'abstract.'"  *Spokeo, Inc. v. Robins*, 578

23   U.S. 330, 340 (2016).  And because an "injury in law is not an injury in fact," it is not enough to

24   allege the mere invasion of a legal interest without identifying any "concrete harm."  *TransUnion

25   LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021); *see also* MTD Order at 9.  Standing under the UCL

26

27

28

1    requires "lost money or property"—*i.e.*, an economic injury in fact.  Cal. Bus. & Prof. Code

2    § 17204; MTD Order at 5-6.[2]

3         Like the original Complaint, the Amended Complaint fails to meet those standards.  In fact,

4    the Amended Complaint includes the same injury allegations, again alleging in conclusory fashion

5    that Plaintiffs have "suffered harm in the form of diminution of the value" of their telephone

6    numbers and email addresses, Am. Compl. ¶ 161, and that Plaintiffs "did not receive the benefit

7    of the bargain . . . for which they paid valuable consideration in the form of the personal

8    information they agreed to share," *id.* ¶ 147; *compare* Compl. ¶¶ 94, 108.  Both of those theories

9    still fail.

10        *First*, as this Court explained, courts routinely reject "diminution-in-value" theories where

11   plaintiffs fail to allege that their personal information had economic value *to them* and that the

12   information actually *lost* value.  *See* MTD Order at 6-7 (collecting cases); *see also, e.g.*, *Ji v. Naver*

13   *Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *9 (N.D. Cal. Sept. 30, 2022) (rejecting

14   diminution-in-value theory of standing absent allegations of "the existence of a market for" the

15   personal information and "the impairment of the ability to participate in that market").  This Court

16   held that the original Complaint failed to allege any concrete injury under this theory because Price

17   did not even allege the first requisite step—that she "could sell her phone number and email

18   address or that it otherwise has economic value to *her*, as opposed to the value that Twitter gained

19   by aggregating that data."  MTD Order at 8 (emphasis in original).

20        The Amended Complaint attempts to address this defect by alleging that Plaintiffs "valued

21   their telephone numbers and email addresses" and "would not have provided them to Twitter

22   without receiving value in exchange" had they known the information would be used for marketing

23   in addition to security.  Am. Compl. ¶ 53; *see also id.* ¶¶ 10, 13, 16, 19, 22, 25, 28 (same allegations

24   for each Plaintiff).  To support that allegation, Plaintiffs identify blogposts recommending that

25   companies offer a "book, guide, webinar, course," or a "cool prize" to encourage customers to sign

26

27   _____
     [2] As this Court explained, the original Complaint did not allege any non-economic harm from
     Twitter's alleged use of contact information for marketing purposes.  MTD Order at 6.  The
28   Amended Complaint likewise includes no allegations related to non-economic injury, and Twitter
     thus addresses Plaintiffs' lack of Article III standing and UCL standing together.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW

1   up for their email lists, and Plaintiffs cite websites estimating the value that *companies* derive from

2   customers' contact information.  *Id.* ¶¶ 54-55.  But these additional allegations suggest only that

3   contact information can be valuable to a business that uses it to communicate advertising to its

4   customers, because advertised-to customers spend more money.  *See Bass v. Facebook, Inc.*, 394

5   F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("That the information has external value, but no

6   economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or

7   property.").  They do not suggest either that Plaintiffs personally have "ever attempted or intended

8   to participate" in any market for their information, *see Moore v. Centrelake Medical Grp., Inc.*, 83

9   Cal. App. 5th 515, 538 (2022), or that Plaintiffs' ability to participate in that market is impaired.

10  *See id.* (diminution-in-value theory not adequately stated where plaintiffs failed to allege that "any

11  prospective purchaser" of personal information would "refuse to enter into a transaction" or "insist

12  on less favorable terms"); MTD Order at 6-8 (collecting additional cases articulating same

13  requirement).  As this Court recognized, Plaintiffs still can "just go and sign up with" a new

14  company regardless of Twitter's use of the same contact information.  Tr. 22:6-24:5.  Plaintiffs

15  thus fail to show that Twitter's alleged use of their contact information caused that information to

16  lose value, as required to support their diminution-in-value theory.

17       *Second*, Plaintiffs' benefit-of-the-bargain theory also fails.  As Twitter explained in its first

18  motion to dismiss, courts generally reject benefit-of-the-bargain theories of injury where, as here,

19  the plaintiff has not paid anything for the service.  *See In re LinkedIn User Priv. Litig.*, 932 F.

20  Supp. 2d 1089, 1093 (N.D. Cal. 2013) (rejecting Article III standing based on "benefit of the

21  bargain" theory where "the FAC fail[ed] to sufficiently allege that Plaintiffs actually provided

22  consideration for the security services" at issue); *cf. Wesch v. Yodlee, Inc.*, No. 20-CV-05991-SK,

23  2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (rejecting benefit-of-the-bargain theory for

24  purposes of UCL claim where plaintiffs did not allege they "paid" defendant "any money for use

25  of its service"); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 (N.D. Cal. 2021) (same); *Huynh v.

26  Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (same,

27  for contract damages).

28

1    Furthermore, even if the benefit-of-the-bargain theory could apply in the context of free

2    services, it still does not apply here.  Plaintiffs' new allegations that they "would not have

3    provided" their contact information to Twitter "without receiving value in exchange," Am. Compl.

4    ¶ 53, "ignore[]" Plaintiffs' contract with Twitter.  MTD Order at 7 (quoting *Moore*, 83 Cal. App.

5    5th at 539).  Plaintiffs allege no facts showing that payment for their contact information was part

6    of any bargain they struck.  *See* Am. Compl. ¶ 147; *see In re Intel Corp. CPU Mktg., Sales Pracs.*

7    *& Prods. Liab. Litig.*, No. 3:18-MD-2828-SI, 2020 WL 1495304, at *8, *32 (D. Or. Mar. 27, 2020)

8    (dismissing for lack of standing where plaintiffs did not adequately allege that their expectations

9    were in fact "the parties' bargain that [defendant] did not meet").  In other words, Plaintiffs "had

10   no expectation interest in the economic value of their [personal information]."  MTD Order at 7

11   (quoting *Moore*, 83 Cal. App. 5th at 539).  Indeed, the case which this Court and *Moore* found

12   persuasive, *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005), clearly

13   rejects the notion that plaintiffs can establish cognizable injury based on the value of their

14   information where "[t]hey had no reason to expect that they would be compensated for the 'value'

15   of their personal information" by the defendant.  *Id.* at 327.  Plaintiffs' new allegations thus fail to

16   establish Article III standing or UCL standing.

### 2.    Plaintiffs Do Not Allege an Imminent Future Injury

18   The Amended Complaint continues to seek unspecified injunctive relief, *see* Am. Compl.

19   ¶¶ 148, 164, but Plaintiffs still wholly fail to allege the "real and immediate threat of repeated

20   injury" required to establish standing for prospective relief.  *See O'Shea v. Littleton*, 414 U.S. 488,

21   496 (1974).  Tellingly, Price did not even defend her standing to seek injunctive relief in the last

22   round of briefing.  *See generally* Plaintiff's Opp. to Mot. to Dismiss ("Price Opp."), Dkt. 34; *see*

23   *also* Mot. to Dismiss Reply at 5 ("MTD Reply"), Dkt. 40.  And the allegations in the Amended

24   Complaint have not meaningfully changed.

25   Just like the original Complaint, the Amended Complaint lacks *any* allegation that

26   Plaintiffs will suffer future harm, and it alleges no ongoing conduct related to this case.  *See*, *e.g.*,

27   Am. Compl. ¶¶ 47, 49, 63, 69, 76, 85 (alleging conduct from May 2013 to September 2019

28   throughout Amended Complaint); *see also id.* ¶ 89 n.13 (stating that "the conduct at issue here

1    occurred between December 2013 and September 2019"); *id.* ¶ 120 (defining Class Period as May

2    2013 to September 2019); *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at

3    *8 (N.D. Cal. Oct. 29, 2019) (dismissing request for injunctive relief where plaintiff made "no

4    allegation of future injury in the complaint whatsoever").  Plaintiffs include new allegations about

5    security incidents and layoffs, but Plaintiffs do not allege any connection to the challenged conduct

6    in this case of matching contact information with advertisers' preexisting customer lists.  *See, e.g.*,

7    Am. Compl. ¶¶ 108-17.  From their new allegations, Plaintiffs contend they have "reasonable

8    grounds for pursuing injunctive and equitable relief" because Twitter is unable to "maintain its

9    security and privacy commitments."  *Id.* ¶ 119.

10        Plaintiffs' conclusory "reasonable grounds" allegation does not establish, as required, a

11    "real and immediate threat of repeated injury" to Plaintiffs.  *Littleton*, 414 U.S. at 496; *see also*

12    *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (holding that plaintiffs must show they "will

13    again be wronged *in a similar way*" (emphasis added)).  Plaintiffs cannot manufacture standing to

14    pursue injunctive relief by pointing to events that are entirely unrelated to this case and that have

15    not and will not impact *them personally*.  *See Lujan*, 504 U.S. at 563 (explaining that "the party

16    seeking review" must "be himself among the injured" (citation omitted)); *Lewis v. Casey*, 518 U.S.

17    343, 358 n.6 (1996) (explaining that a plaintiff "who has been subject to injurious conduct of one

18    kind" does not possess "the necessary stake in litigating conduct of another kind, although similar,

19    to which he has not been subject" (citation omitted)).  Furthermore, the conclusory assertion that

20    Twitter is failing to maintain its security commitments is far too "conjectural" and "hypothetical"

21    to establish standing in any event.  *Lujan*, 504 U.S. at 560 (citation omitted); *see also, e.g.*, *Clapper*

22    *v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (explaining that future injury for standing must be

23    "certainly impending").  That Plaintiffs rest their ability to pursue injunctive relief on such tenuous

24    and irrelevant allegations simply confirms that Plaintiffs cannot establish any risk of future injury.[3]

25        Because Plaintiffs lack standing to pursue both their claims for damages and their claims

26    for injunctive relief, the Amended Complaint should be dismissed in its entirety.

---

27    [3] As Twitter previously explained (and Plaintiffs do not allege otherwise), Plaintiffs may simply
28    opt out of interest-based advertising if they do not want their contact information to be used for
such advertising.  *See* Privacy Policy at 9-10; *see also* MTD Order at 9-10 (noting opt-out option).

**B.      Plaintiffs' Amendments Fail to Cure the Other Deficiencies this Court Identified**

This Court identified in its dismissal order three "additional deficiencies" for Plaintiffs to address in any amended complaint: (1) the Privacy Policy's disclosures that Twitter uses contact information to provide more relevant advertisements contradict Plaintiffs' claims; (2) the implied- and quasi-contract claims cannot proceed alongside an express contract claim absent allegations that the express contract is unenforceable or invalid; and (3) equitable relief is available only if the complaint alleges facts showing a plaintiff lacks "an adequate remedy at law."  MTD Order at 9-10.  The Amended Complaint fails to adequately address any of these concerns.

**1.      The Privacy Policy Disclosures Defeat All of Plaintiffs' Claims**

Plaintiffs continue to rest their claims on the core allegation that Twitter misrepresented its use of account holder contact information provided for security purposes by using it for advertising purposes as well.  But, as this Court recognized, Twitter's Privacy Policy "discloses that Twitter would use [account holders'] email address and phone number, as well as other information, to show [them] more relevant advertisements."  MTD Order at 9-10.  Plaintiffs still have no answer to the Privacy Policy disclosures, which defeat Plaintiffs' misrepresentation-based claims and underscore that Plaintiffs cannot allege a breach of contract based on conduct that Twitter expressly disclosed in that contract.

**Misrepresentation-Based Claims.**      Plaintiffs' UCL, implied contract, and unjust enrichment claims are premised on the allegation that Twitter misrepresented and failed to disclose how it would use account holder contact information provided for security purposes.  *See* Am. Compl. ¶¶ 49, 86-87, 92-94, 158-59, 168, 150, 154.  But the Privacy Policy repeatedly notifies account holders that their contact information will be used for marketing and advertising purposes in the preamble, Section 1.3, and Section 2.6.  *See supra* Section II.A.  Each of Plaintiffs' claims fails in light of those disclosures.  *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162-64, 1168 (9th Cir. 2012) (affirming dismissal of UCL claim where annual fee was accurately disclosed in governing agreement, despite not being mentioned in related advertisement); *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 2812188, at *5, *17 (N.D. Cal.

July 18, 2022) (dismissing UCL and unjust enrichment claims because "when a defendant truthfully and clearly discloses an alleged misrepresentation or omission, a plaintiff cannot plausibly state a claim for relief").

In an attempt to overcome Twitter's disclosures, Plaintiffs contend that Section 1.3 discloses only that Twitter uses "contact information" *provided at the time of account creation* for advertising, not at any later time, because in Plaintiffs' view, the "contact information" described in Section 1.3 is limited to the "personal data" described in Section 1.1, which concerns only data provided at account creation. Am. Compl. ¶¶ 139-44; *see also id.* ¶¶ 95-100 (repeating same allegations). Plaintiffs' strained interpretation is belied by the structure and language of the Privacy Policy.

Section 1.1 and Section 1.3 fall within a section of the Privacy Policy broadly titled "Information You Share With Us." *See* Privacy Policy at 2. That section addresses both the information that is "require[d]" to be shared and also information that account holders can "choose to share." *Id.* Accordingly, while Section 1.1 addresses "personal data" required to create an account, *id.*, the subsequent subsections, including Section 1.3, address information that account holders may share with Twitter throughout their use of its services, including tweets and retweets; contact information; direct messages; and payment information, *see id.* at 3-5. Contrary to Plaintiffs' argument, each of those subsections plainly includes information beyond Section 1.1's account creation data and governs the ongoing, interactive relationship account holders have with Twitter.

The language of Section 1.3 itself further refutes Plaintiffs' interpretation. Section 1.3 uses a different term—"contact information"—than Section 1.1. And it uses the term without limitation. Section 1.3 does not say "contact information that you provide us to create an account," as Plaintiffs would have it. Rather, Section 1.3 is broadly titled "Contact Information and Address Books," and it describes how Twitter "use[s]" "contact information, *such as your email address or phone number*." *Id.* at 4 (emphasis added). By contrast, Section 1.1's "personal data" is not limited to email address or phone number—it includes username and password. *Id.* at 2. Under Plaintiffs' theory, if "contact information" means "personal data," then Section 1.3 discloses that

Twitter may "use your [personal data, including username and password] … to market to you." *Id.* at 4. That makes no sense. Section 1.3 clearly refers to contact information *provided at any time*, and it does not include *non*-contact information such as username and password.

Plaintiffs do not even attempt to address the other disclosures in the Privacy Policy. The Privacy Policy states at the very outset that account holders "can choose to share additional information with us like your email address, [and] phone number," and that Twitter "use[s] this information for things like keeping your account secure and showing you . . . ads." *Id.* at 1. That statement plainly is not limited to account creation information, since it refers to account holders *choosing* to share *additional* information. And the "Advertisers" section of the Privacy Policy likewise reiterates that Twitter "use[s] the information described in this Privacy Policy to help make our advertising more relevant to you," without limiting that statement to account creation information. *Id.* at 8-9.

These provisions directly contradict Plaintiffs' conclusory allegations that Twitter misrepresented its use of account holder contact information, and they defeat Plaintiffs' UCL, implied contract, and unjust enrichment claims.

**Contract Claim.** Plaintiffs' contract claim fares no better. As an initial matter, to state a breach of contract claim, Plaintiffs must identify a contractual provision that Twitter breached. But, as before, the Amended Complaint does not point to *any* promise by Twitter not to use account holder contact information for advertising purposes. That alone is fatal to Plaintiffs' breach of contract claim, because the "question is whether [Twitter] breached anything that it promised, not whether [Twitter] did anything it did not promise." *Hammerling*, 2022 WL 2812188, at *16. And the disclosures in the Privacy Policy underscore that, in fact, Twitter expressly disclosed that it *would* use contact information for advertising purposes.

Plaintiffs attempt to work around the disclosures by alleging in the Amended Complaint that Section 3.1 of the Privacy Policy, which states that Twitter "share[s] or disclose[s] information with your consent or at your direction," applies to the information at issue here, and that Twitter breached that statement because it "neither sought nor obtained" Plaintiffs' consent. Am. Compl. ¶¶ 138, 144. But Section 3.1 is inapplicable, because just like the original Complaint, the Amended

Complaint does not include any factual allegations that Twitter *shared* or *disclosed* information to third parties, as opposed to *using* the information.  In fact, the Court raised this issue at the hearing on Twitter's prior motion to dismiss, and Price's counsel conceded that the original Complaint did not allege "that Twitter sent the list of email addresses or phone numbers to these advertisers."  Tr. 7:7-9; *see also* Tr. 6:24-7:4 (Court explaining that it did not "see in [the] complaint that" Price "alleged that Twitter had disclosed" the contact information "to a third party"); MTD Order at 6 n.1 (explaining that original complaint did not allege Twitter "disclosed" contact information). The Amended Complaint contains no additional or revised disclosure allegations, and this Court's observation and counsel's concession thus continue to hold.  Nor *could* Plaintiffs include such allegations—the challenged conduct here involved services by which Twitter's database internally *matched* account holder information with lists provided by advertisers so that Twitter could deliver interest-based ads; it did not involve disclosure.  *See* Am. Compl. ¶¶ 5, 46-47; *see also* MTD at 16; MTD Reply at 4-5.  Accordingly, whatever Section 3.1 might say about sharing and disclosure with third parties, it does not relate to Twitter's *use* of contact information for advertising purposes—conduct expressly disclosed in the preamble, Section 1.3, and Section 2.6.  Plaintiffs thus fail to allege any breach of Section 3.1.  Am. Compl. ¶ 138.

Plaintiffs' alternative theories of breach are the same as before and still without merit.  They continue to allege that Twitter breached the statement that Twitter "believe[s] you should always know what data we collect" and "how we use it," *id.* ¶¶ 135, 138, but that language does not constitute an enforceable promise.  *See* MTD at 14-15; *Block v. eBay, Inc.*, 747 F.3d 1135, 1138-40 (9th Cir. 2014) (affirming dismissal of breach of contract claim where relevant provision "contain[ed] no promissory language" and thus, did not "constitute[] an enforceable promise"). And even if it did, Plaintiffs plainly knew Twitter was collecting their contact information, because they voluntarily provided it, and the disclosures discussed above expressly informed account holders "how [Twitter] use[s]" it—for both security and marketing purposes.  *See* Privacy Policy at 4.  Plaintiffs also continue to allege that Twitter breached a promise to give account holders "control" over Twitter's use of their data through account settings, Am. Compl. ¶¶ 135-37, but they again allege no facts showing Twitter did not do that.  Nor do Plaintiffs address the Privacy

Policy's opt-out features, *see* Privacy Policy at 9 (Section 2.6), *id.* at 10 (Section 2.10), even though this Court specifically flagged them as a deficiency in Plaintiffs' claims.  MTD Order at 9-10.

### 2. Plaintiffs Still Fail to Sufficiently Allege Their Implied Contract and Unjust Enrichment Claims in the Alternative to Their Breach of Contract Claim

Implied contract and unjust enrichment claims cannot lie where there is an "enforceable contract" which "govern[s] the subject matter" of those claims.  *Hammerling*, 2022 WL 2812188, at *16 (dismissing implied contract claim where Google's Terms of Service and Privacy Policy "govern[ed] the subject matter of Plaintiffs' implied contract claim—scope and purpose of data collection").  Accordingly, as the Court's prior dismissal order explained, "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid."  MTD Order at 10 (citing *Saroya v. Univ. of the Pacific*, 503 F. Supp. 3d 986, 998-99 (N.D. Cal. 2020)).[4]

But Plaintiffs make no effort at all to "clearly allege" "facts which suggest the [Privacy Policy] may be unenforceable or invalid," as this Court instructed.  *Id.*  Instead, Plaintiffs allege that their implied- and quasi-contract claims "properly lie" "*to the extent*" the alleged conduct "falls outside sections 1.3 and 3.1."  Am. Compl. ¶ 100 n.14 (emphasis added).  But the Terms of Service and Privacy Policy plainly govern the conduct at issue here—Twitter's "collection and use" of account holder information, Engel Decl. Ex. A at 2 (2018 Terms of Service); *see also* Privacy Policy at 4—even if Plaintiffs do not like what those provisions say.

Accordingly, because Plaintiffs fail to "dispute [] the existence or validity of the [Privacy Policy]," they are not "entitled to plead both [their] express contract[] and quasi-contract claims in the alternative."  *Total Coverage, Inc. v. Cendant Settle. Services Group, Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007); *see also Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022)

---

[4] While the Court referred specifically to the implied contract claim, Plaintiffs' unjust enrichment claim is also subject to the same rule, *see Saroya*, 503 F. Supp. 3d  at 998-99 (dismissing unjust enrichment claim where plaintiff "did not deny the existence or enforceability" of governing contract), because to the extent unjust enrichment can be alleged as a standalone claim at all, it must be construed as a quasi-contract claim.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1    (dismissing quasi-contract claim and noting that "[w]here there is no [] dispute over [the] validity

2    or enforceability" of an express contract, "dismissal with prejudice is appropriate").  Plaintiffs'

3    implied contract and unjust enrichment claims should therefore be dismissed with prejudice.

### 3.    Plaintiffs' Requests for Equitable Relief Are Still Barred by *Sonner*

5            The Court's dismissal order also instructed that if the Amended Complaint "seeks equitable

6    relief," it "must allege facts to support [the] contention that" Plaintiffs "lack[] an adequate remedy

7    at law."  MTD Order at 10.  But none of Plaintiffs' new allegations satisfy that requirement, and

8    their requests for equitable relief—including the entirety of their UCL and unjust enrichment

9    claims—are therefore foreclosed by the Ninth Circuit's decision in *Sonner v. Premier Nutrition*

10   *Corp.  See* 971 F.3d 834, 842-43 (9th Cir. 2020) (holding that a plaintiff cannot seek equitable

11   relief in federal court unless she demonstrates that she lacks "an adequate remedy at law"); *see*

12   *also Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (affirming the

13   principles set forth in *Sonner* and rejecting attempts to limit its applicability).

14           Plaintiffs continue to include a single, conclusory allegation stating that "Plaintiffs and

15   Class members have no adequate remedy at law."  Am. Compl. ¶ 169.  As this Court recognized,

16   that conclusory allegation does not itself supply the requisite "facts" needed to support an

17   entitlement to equitable relief.  MTD Order at 10; *see also* Tr. 24:18 (Price's counsel describing

18   allegation as "admittedly conclusory").[5]  Plaintiffs add allegations concerning unrelated security

19   incidents and the company's recent acquisition, Am. Compl. ¶¶ 103-19, but they do not even try

20   to suggest that those allegations render the legal remedies Plaintiffs seek in connection with their

21   contract claims *inadequate*; they merely assert that seeking equitable relief is "reasonable."  *Id.*

22   ¶ 119.  That is not the applicable standard, and Plaintiffs do not explain why or how conduct that

23   is completely unrelated to the conduct at issue in this case—some of which took place years *after*

24   the end of the Class Period—shows that they lack an adequate remedy at law.  *See id.* ¶¶ 148, 163-

25

---

26   [5] *See also, e.g., Freund v. HP, Inc.*, No. 22-CV-03794-BLF, 2023 WL 187506, at *6 (N.D. Cal. Jan. 13, 2023) (dismissing claims for equitable relief under *Sonner* where plaintiffs failed to "plead
27   facts as to *why* their claims . . . provide inadequate remedies at law"); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1112-13 (N.D. Cal. 2022) (citation omitted) (dismissing claims for equitable relief
28   under *Sonner* where plaintiff "merely assert[ed] that he lack[ed] adequate remedies at law, but fail[ed] to allege facts or reasons why that is the case").

64, 171.  Nor could they.  As Twitter previously explained, Plaintiffs' contract claims are based on the same conduct and purported harms as their UCL and unjust enrichment claims, and Plaintiffs thus have an adequate legal remedy for those alleged harms.  *See id.* ¶¶ 132, 146-47, 156, 161, 165, 167; *Raynaldo v. Am. Honda Motor Co.*, No. 21-CV-05808-HSG, 2022 WL 4358096, at *18 (N.D. Cal. Sept. 20, 2022) (dismissing claims for equitable relief under *Sonner* where claims were all premised on the "same conduct" that "forms the basis of [plaintiffs'] requests for damages");  *Moran v. Bondi Sands (USA) Inc.*, No. 21-CV-07961-JSW, 2022 WL 1288984, at *6 (N.D. Cal. Apr. 29, 2022) (similar).  None of the new allegations indicate that remedy is "inadequate or incomplete." *Sonner*, 971 F.3d at 844.

## C.   Plaintiffs' Amendments Also Fail to Cure Additional Deficiencies Twitter Identified

In addition to the key deficiencies identified by this Court in its order, including Plaintiffs' failure to identify any misrepresentation or breached contractual provision, Twitter also identified additional flaws that Plaintiffs leave unaddressed and that also require dismissal of the Amended Complaint.

### 1.   Plaintiffs Still Fail to State a Claim for Breach of Contract for Additional Reasons

Plaintiffs rest their allegations of breach on the same statements alleged in the original Complaint, *see* Am. Compl. ¶¶ 135-38, but Plaintiffs still fail to adequately state their contract claim for two reasons.  *First*, as discussed above, Plaintiffs fail to identify any promise that was breached, as required to state a claim.  *See supra* Section IV.B.1.

*Second*, Plaintiffs still fail to allege cognizable damages.  Neither Plaintiffs' diminution-in-value theory nor their benefit-of-the-bargain theory is adequately pled, *see supra* Section IV.A.1, and under binding Ninth Circuit precedent, their contract and implied contract claims require as an element "appreciable and actual damage" as a result of Twitter's conduct.  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *see also Varga v. Wells Fargo Bank, N.A.*, 796 F. App'x 430, 431 (9th Cir. 2020) (affirming dismissal of contract and implied contract claims under California law where plaintiff "did not plausibly allege that she had suffered damages or other injury" from the alleged breach, and citing *Oasis W. Realty, LLC v.*

*Goldman*, 51 Cal. 4th 811, 821 (2011)).  While Price previously argued that California law permits an award of nominal damages, the cases cited in support of that argument reflect at most that nominal damages may be available where a plaintiff fails to *prove* her injury after trial or at summary judgment.  *See, e.g.*, *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965-66 (2021) (holding that plaintiff should have been awarded nominal damages post-trial despite inability to prove actual damage).  The well-established rule under California Supreme Court and Ninth Circuit precedent still requires a plaintiff to *plead* actual damage in order to state a contract claim.  *See, e.g.*, *Oasis*, 51 Cal. 4th at 821; *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 & n.33 (9th Cir. 2017).  Under that rule, Plaintiffs' contract claims should be dismissed.

### 2.      Plaintiffs Still Fail to State a UCL Claim

In its prior motion to dismiss, Twitter argued that the UCL claim should be dismissed for (1) failure to plead actual reliance on any purported misrepresentations or omissions, (2) failure to sufficiently allege a predicate violation for the "unlawful" UCL claim, and (3) failure to satisfy either the "tethering" or "balancing" tests as required to state an "unfair" UCL claim.  MTD at 17-20.  Those same reasons warrant dismissal here under any standard, and especially under the heightened pleading requirements of Rule 9(b), which apply to both prongs of Plaintiffs' UCL claim.  *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 910-14 (N.D. Cal. 2020) (applying Rule 9(b) and dismissing all prongs of UCL claim based on alleged misrepresentations).

*First*, as Price conceded in the last round of briefing, a plaintiff must allege "actual reliance" to state a UCL claim where, as here, the claim is premised on purported misrepresentations.  *See* Price Opp. at 21; *see also Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 563 (N.D. Cal. 2019) (explaining that actual reliance requirement applies to all prongs of UCL for claims based on alleged misrepresentations or omissions).  But the Amended Complaint still fails to identify any alleged misrepresentations, much less explain why they were false or misleading.  *See* Am. Compl. ¶ 160 (referring generally to "misrepresentations regarding, and failure to disclose the purposes for which [Twitter] was collecting and utilizing" contact information); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *28 (N.D. Cal. Aug. 30, 2017) (holding that reciting statements in Complaint's "general factual allegations,"

without "explain[ing] why any of these statements are false and misleading" under the UCL is insufficient).  And Plaintiffs do not allege that they actually read and relied upon any alleged misrepresentation.  *See Great P. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 782-83 (9th Cir. 2018) (affirming dismissal of UCL claim for failure to plead that plaintiff "received and was aware of" challenged representations); *Williams*, 449 F. Supp. 3d at 913 (citation omitted) (collecting cases and noting that courts in this district have "consistently held that plaintiffs in misrepresentation cases must allege they actually read the challenged representations").  Similarly, to the extent Plaintiffs' UCL claim rests on an omission theory, Plaintiffs cannot plausibly plead that "had the omitted information been disclosed," they each "would have been aware of it and behaved differently," *In re Yahoo!*, 2017 WL 3727318, at *30 (citation omitted), because Twitter *did* disclose that it uses contact information for advertising and marketing purposes, and Plaintiffs apparently either were not aware of that disclosure or did not change their behavior because of it. Plaintiffs' UCL claim should therefore be dismissed for failure to demonstrate actual reliance.

*Second*, Plaintiffs' "unlawful" UCL claim is premised on the same deficient theory as the original Complaint.  *See* Am. Compl. ¶¶ 158-59.  Specifically, Plaintiffs once again attempt to plead predicate violations of the 2011 FTC Order and Section 5 of the FTC Act, the Privacy Shield and Frameworks, and Cal. Bus. & Prof. Code. § 22576—all based on the same core allegation that Twitter misrepresented its collection and use of contact information provided by account holders for security purposes.  *See* Am. Compl. ¶¶ 49, 86-87, 92-94.   But, as described above, each of those challenges fails in light of the numerous disclosures in Twitter's Privacy Policy that expressly disclosed the conduct Plaintiffs' challenge.  *See supra* Section IV.B.1; *see also* MTD at 18-19.  Plaintiffs' UCL "unlawful" claim should therefore be dismissed.  *See, e.g.*, *Ramirez v. HV Glob. Mgt. Corp.*, No. 21-CV-09955-BLF, 2023 WL 322888, at *6 (N.D. Cal. Jan. 19, 2023) (holding that a "UCL unlawful claim fails where no predicate violation . . . is plausibly pled").

*Third*, Plaintiffs' "unfair" UCL claim is still based on the same underlying conduct as their "unlawful" UCL claim, Am. Compl. ¶ 160, and the insufficiency of that purported misconduct similarly dooms Plaintiffs' unfair claim.  *See Sidhu v. Bayer Healthcare Pharm. Inc.*, No. 22-CV-01603-BLF, 2022 WL 17170159, at *9 (N.D. Cal. Nov. 22, 2022) (dismissing unfair UCL claim

that was "based on the same conduct underlying" plaintiff's unlawful UCL claim, which was insufficiently pled); *Hammerling*, 2022 WL 2812188, at *15 (same).

Aside from that independent failure, Plaintiffs' unfair UCL claim still does not satisfy either requisite test to state a claim. *See Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2021 WL 5113182, at *9 (N.D. Cal. Nov. 3, 2021) (noting that the Ninth Circuit has "approved the use of two tests in consumer actions"—the "tethering test" and the "balancing test" (citation omitted)). Plaintiffs still fail to allege a violation of any "public policy tethered to a specific constitutional, statutory, or regulatory provision" and similarly fail to allege any facts to "support an inference that [Twitter] violated the letter, policy, or spirit" of any such provisions, as required under the "tethering" test. *See 1305 Ridgewood, LLC v. Athas Capital Group, Inc.*, No. 21-CV-04647 SBA, 2022 WL 4139514, at *5 (N.D. Cal. Sept. 12, 2022); MTD at 19-20. And Plaintiffs' allegations under the "balancing" test fare no better. As described above, Plaintiffs have "not adequately pled a substantial injury," meaning there is no "harm" to balance against Twitter's conduct. *See Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1045 (N.D. Cal. 2021); *Shuman*, 2021 WL 5113182, at *9. And as Twitter explicitly disclosed its ability to engage in the conduct at issue in this case, Plaintiffs cannot claim that Twitter engaged in a business practice that is "immoral, unethical, oppressive, or unscrupulous." *See Davis*, 691 F.3d at 1170 (holding that conduct was not "immoral, unethical, oppressive, or unscrupulous" for purposes of balancing test where defendant "clearly disclosed" annual fee about which plaintiff complained).

Plaintiffs' UCL claim should therefore be dismissed.

### 3. Plaintiffs' Implied Contract and Unjust Enrichment Claims Are Still Time-Barred by the Applicable Two-Year Statute of Limitations

Plaintiffs' implied contract and unjust enrichment claims are subject to a two-year statute of limitations, and have been barred since at least October 2021—two years after Twitter publicly announced the conduct that forms the basis of Plaintiffs' entire Amended Complaint. *See Stanford Health Care v. USAble Mut. Ins. Co.*, 548 F. Supp. 3d 909, 912 (N.D. Cal. 2021) (citing Cal. Civ. Proc. Code § 339(1)) (acknowledging two-year statute of limitations for implied contract claims); *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) (citing Cal. Civ. Proc. Code § 339(1))

1   (acknowledging two-year statute of limitations for unjust enrichment claims); Engel Decl. Ex. C

2   (October 8, 2019 Twitter Announcement); Engel Decl. Exs. D-F (news articles regarding

3   announcement).

4         When considering the original Complaint, the Court questioned why "Twitter's public

5   announcement in October 2019 [did] not put Plaintiff on notice for her claims and start the accrual

6   of [the] statute of limitations."  Notice of Questions at 3, Dkt. 41.  The short answer is that it did,

7   and the Amended Complaint does nothing to address that problem.  Plaintiffs continue to assert

8   that the statute of limitations was tolled under the "delayed discovery" and "fraudulent

9   concealment" doctrines, *see* Am. Compl. ¶ 101, but Plaintiffs fail to adequately allege facts

10  supporting either doctrine, and neither doctrine could apply given Twitter's public announcement.

11        *First*, Plaintiffs cannot rely on the delayed discovery doctrine because they do not

12  "specifically plead facts to show (1) the time and manner of discovery [of their cause of action]

13  *and* (2) the inability to have made earlier discovery despite reasonable diligence," as California

14  law requires.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (citation omitted)

15  (emphasis in original).  Instead, they assert only that they "could not reasonably have discovered

16  Twitter's conduct . . . until shortly before the Complaint was filed," Am. Compl. ¶ 101, without

17  alleging facts to support that assertion and without alleging when and how they ultimately

18  discovered their claims.  And, in any event, Plaintiffs plainly "could have discovered [their

19  purported] injury . . . through the exercise of reasonable diligence" as soon as Twitter made its

20  public announcement in October 2019.  *See H.B. Filmes, Ltda. v. CBS, Inc.*, 98 F. App'x 596, 598

21  (9th Cir. 2004) (citation omitted); *see also Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007)

22  (holding that where plaintiffs "could have discovered" their claim "through investigation of

23  sources open to them," the delayed discovery rule did not toll the statute of limitations).

24        Similarly, Plaintiffs fail to adequately allege the "fraudulent concealment" doctrine, which

25  must be pled with particularity under Rule 9(b).  *Finney v. Ford Motor Co.*, No. 17-CV-06183-

26  JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2018).  Plaintiffs allude to Twitter's "knowing

27  and active concealment and denial" of the alleged conduct, Am. Compl. ¶ 101, without alleging

28  any facts to support that allegation, much less "'the who, what, when, where, and how of the

1    misconduct charged.'"  *WellPoint*, 904 F.3d at 677 (citation omitted).   And again, that is no

2    surprise because contrary to Plaintiffs' conclusory allegation that Twitter fraudulently concealed

3    its conduct, Twitter did the *exact opposite*—it made that conduct widely and publicly known with

4    its October 2019 announcement.  *See, e.g.*, *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F.

5    Supp. 3d 981, 993-94 (N.D. Cal. 2020) (fraudulent concealment doctrine inapplicable where

6    conduct was publicized in news articles and announced by defendant in blogpost).   Accordingly,

7    the statute of limitations for Plaintiffs' implied contract and unjust enrichment claims was not

8    tolled beyond October 2019, and those claims are time-barred and should be dismissed.

9
          **4.    Plaintiffs Still Fail to State Implied Contract and Unjust Enrichment**
10            **Claims**

11           In addition to the grounds already discussed for dismissal of Plaintiffs' implied contract

12   and unjust enrichment claims, *see supra* Sections IV.B.1, IV.B.2, IV.C.3, those claims also fail for

13   additional reasons.

14           As an initial matter, both claims are subject to Rule 9(b)'s heightened pleading standard,

15   because they rest on Plaintiffs' core allegation that Twitter misrepresented its collection and use

16   of contact information provided for security purposes.  *See Loh v. Future Mot., Inc.*, No. 5:21-CV-

17   06088-EJD, 2022 WL 2668380, at *5 (N.D. Cal. July 11, 2022) (applying Rule 9(b) to unjust

18   enrichment and implied contract claims that relied on the same allegations that defendant had

19   "misrepresented certain features" of its product).  But as with the UCL claim, Plaintiffs fail to

20   identify with specificity any alleged misrepresentation, much less to explain "'what is false or

21   misleading about [the purportedly fraudulent] statement, and why it is false.'"  *WellPoint*, 904 F.3d

22   at 677 (alteration in original) (citation omitted).

23           Rather, in connection with their implied contract claim, Plaintiffs continue to assert that

24   Twitter agreed to use contact information obtained through security flow processes "solely" for

25   security purposes, even though no such representations were made in *any* of the security flow

26   screenshots Plaintiffs submitted with their Amended Complaint.  *See* Am. Compl. ¶¶ 59, 61-62,

27   67-68, 73-75, 151; *Mersnick v. USProtect Corp.*, No. C-06-03993 RMW, 2007 WL 2669816, at

28   *4 (N.D. Cal. Sept. 7, 2007) (dismissing implied contract claim where plaintiff did not "provide

1    any factual allegations supporting the existence of an implied contract . . . with the particular terms

2    he alleges"). And, as discussed above, the Privacy Policy defeats Plaintiffs' allegations because it

3    repeatedly states that contact information provided by account holders may be used for *both*

4    advertising and security purposes. *See supra* Section IV.B.1.

5         Similarly, in support of their unjust enrichment claim, Plaintiffs reiterate their assertion

6    that Twitter obtained account holder information through "inequitable means" by "fail[ing] to

7    disclose all the purposes for which it would use" that information. Am. Compl. ¶ 168. Yet Twitter

8    *did* disclose exactly how it would use that information in the Privacy Policy, and its use of the

9    information to provide more relevant ads thus cannot support a claim for unjust enrichment. *See*

10   *supra* Section IV.B.1; *Hammerling*, 2022 WL 2812188, at *17 (dismissing unjust enrichment

11   claim where plaintiffs "fail[ed] to plead with particularity that Google committed an actionable

12   misrepresentation or omission"); *Schrader Cellars, LLC v. Roach*, No. 21-CV-01431-SK, 2021

13   WL 9816545, at *5 (N.D. Cal. June 10, 2021) (citation omitted) ("[W]hen a plaintiff fails 'to

14   sufficiently plead an actionable misrepresentation or omission, his [or her] restitution claim must

15   be dismissed.'"). In light of the critical deficiencies that still plague both claims, Plaintiffs' implied

16   contract and unjust enrichment claims should be dismissed.

17        **D.    Further Amendment Would Be Futile**

18        The fundamental flaws in Plaintiffs' claims cannot be cured by amendment. Plaintiffs have

19   suffered no cognizable injury from Twitter's use of their voluntarily-provided contact information

20   for marketing purposes consistent with its Privacy Policy, and the alleged conduct simply is not

21   actionable. In dismissing the original Complaint, this Court nevertheless afforded Price a second

22   opportunity to establish Article III standing and offered "guidance" as to "additional deficiencies"

23   to address. MTD Order at 9-10. The fact that Plaintiffs' Amended Complaint still fails to allege

24   any concrete and particularized harm sufficient for Article III standing and that Plaintiffs did not

25   even try to address several of the additional deficiencies this Court identified confirms further

26   amendment would be futile. The Amended Complaint should accordingly be dismissed without

27   leave to amend. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir.

28

1   2011) (explaining that "a district court may dismiss without leave [to amend]" when "amendment

2   would be futile").

3   **V.      CONCLUSION**

4            For the foregoing reasons, the Court should grant Twitter's Motion and dismiss the

5   Amended Complaint without leave to amend.

6

7   DATED:  March 1, 2023                         Respectfully submitted,

8                                                 LATHAM & WATKINS LLP

9                                                   _/s/ Elizabeth L. Deeley_
                                                  Elizabeth L. Deeley (CA Bar No. 230798)
10                                                  elizabeth.deeley@lw.com
                                                  Whitney B. Weber (CA Bar No. 281160)
11                                                  whitney.weber@lw.com
                                                  505 Montgomery Street, Suite 2000
12                                                San Francisco, California 94111-6538
                                                  Telephone: +1.415.391.0600
13
                                                  Michele D. Johnson (CA Bar No. 198298)
14                                                  michele.johnson@lw.com
                                                  650 Town Center Drive, 20th Floor
15                                                Costa Mesa, California 92626-1925
                                                  Telephone: +1.714.755.8113
16
                                                  Susan E. Engel (*Pro Hac Vice*)
17                                                  susan.engel@lw.com
                                                  Margaret A. Upshaw (*Pro Hac Vice*)
18                                                  maggie.upshaw@lw.com
                                                  555 Eleventh Street, NW, Suite 1000
19                                                Washington, D.C. 20004-1304
                                                  Telephone: +1.202.637.3309
20
                                                  *Attorneys for Defendant Twitter, Inc.*
21

22

23

24

25

26

27

28